**Joel THROPE, et al., Plaintiffs,**

v.

**STATE OF OHIO, et al., Defendants.**

**No. C–1–96–764.**

United States District Court,
S.D. Ohio,
Western Division.

Aug. 28, 1998.

Richard Leo Creighton, Jr., Joseph M. Callow, Jr., Patrick F. Fischer, Keating, Muething & Klekamp, Cincinnati, OH, for Joel Thrope.

Stephen Howard Johnson, Ohio Atty. Gen., Business & Government Regulation Section, Columbus, OH, for State of Ohio, Dept. of Public Safety.

ORDER GRANTING PLAINTIFFS' MO-
TION FOR SUMMARY JUDGMENT,
AND DENYING DEFENDANTS' MO-
TION TO DISMISS OR FOR SUM-
MARY JUDGMENT

DLOTT, District Judge.

This matter is before the Court on the Plaintiffs' Renewed Motion for Summary Judgment (doc. # 35), and the Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (doc. # 34). This case came before the Court for oral argument on July 1, 1998. For the reasons stated below, Plaintiffs' Motion is hereby **GRANTED** and Defendants' Motion is hereby **DENIED**.

## I. INTRODUCTION

This is a class action lawsuit brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.* The class members include over 300,000 Ohio residents and organizations who have been required to pay a $5.00 fee to the State of Ohio in order to obtain, renew, or replace a permanent handicapped windshield placard.[1] When displayed in the windshield of a motor vehicle, the placard allows for access to special parking spaces reserved for persons with disabilities. Plaintiffs allege that the State of Ohio's program of charging a $5.00 fee for these placards is a violation of the ADA because the ADA prohibits public entities from passing on the costs of such a program to disabled persons.

The Defendants in this action are the State of Ohio ("State" or "Ohio"); the Ohio Department of Public Safety ("DPS"); Mitchell J. Brown, Director of the Department of Public Safety; the Ohio Bureau of Motor Vehicles ("BMV"); and Frank R. Caltrider, Registrar of Motor Vehicles. The individuals are sued only in their official capacities, and therefore this suit is essentially against only the State. The Defendants contend that this Court lacks subject matter jurisdiction, and thus seeks dismissal of this suit. Even if jurisdiction exists, however, the Defendants contend that Ohio's program of issuing placards for a $5.00 fee does not violate the ADA.

The parties agree that no issues of material fact remain, and that this case turns on the legal questions of whether federal jurisdiction exists and whether Ohio's program of issuing handicapped parking placards violates the ADA. *See* Joint Stipulation Submitting Entire Case on Cross–Motions for Summary Judgment (doc. # 28); Fed.R.Civ.P. 56(c) (Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

## II. ANALYSIS

The Court will first briefly summarize the relevant features of the ADA and of Ohio's program of issuing handicapped parking placards. Next the Court will address the jurisdictional issues raised by the Defendants. Finally, the Court will turn to the merits of the case.

### A. The Americans with Disabilities Act

The Americans with Disabilities Act is a broad federal law designed to combat discrimination against disabled persons. With respect to public entities, the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[2] Congress directed the Department of Justice to promulgate regulations to implement the Act. 42 U.S.C. § 12134. Among the regulatory requirements of the ADA is the creation of special parking places for disabled persons, in order

---

1. Joel Thrope, the class representative, is an Ohio resident who is physically disabled within the meaning of Ohio Rev.Code 4503.44. Like all class members, Mr. Thrope was required to pay a fee to the State of Ohio to obtain a permanent handicapped windshield placard.

2. The ADA became effective as to state and local governments on January 26, 1992. 42 U.S.C. §§ 12202, 12134; *see O'Bryant v. City of Midland,* 9 F.3d 421, 422 (5th Cir.1993).

to ensure accessibility to places of public accommodation. *See* 28 C.F.R. § 36.304; 28 C.F.R. pt. 36, Appendix A, *ADA Accessibility Guidelines for Buildings and Facilities; Kornblau v. Dade County,* 86 F.3d 193, 194 (11th Cir.1996); *Petillo v. California Dep't of Motor Vehicles,* Case No. CV96–5569JSL, (C.D.Cal. June 4,1997).

The ADA regulations regarding state and local government services also include general prohibitions against discrimination. Public entities are required to "make reasonable modifications in policies, practices, or procedures when ... necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). One of the specific prohibitions forms the basis of the Plaintiffs' claim in this case. The regulation specifically prohibits public entities from imposing a surcharge on disabled persons to cover the costs of an ADA-mandated measure:

> A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as provisions of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act.

28 C.F.R. § 35.130(f). The surcharge provision prevents disabled persons from being denied access to ADA-mandated benefits or services because they do not have the funds to pay for them, and it spreads the costs of such benefits or services to all taxpayers. *See McGarry v. Director, Department of Revenue, State of Missouri,* 7 F.Supp.2d 1022 (W.D.Mo.1998). The question raised by the present case is whether Ohio's program of issuing handicapped parking placards for a $5.00 fee violates this federal regulation.

**3.** The State of Ohio also issues *temporary* placards to Ohio residents who are temporarily disabled. Ohio Rev.Code § 4503.44(E). Plaintiffs in this case do not challenge the fees collected for the temporary placards.

**4.** In addition to the $5.00 fee to the State of Ohio, Deputy Registrars throughout the state are permitted to charge an additional service fee. Plaintiffs in this case challenge only the $5.00 fee for the placards.

**B. Ohio's Handicapped Parking Placard Program**

Ohio's program for providing access to federally-mandated handicapped parking places is described at Ohio Revised Code § 4503.44. Under this program, there are only two ways in which persons with a walking impairment may access the reserved handicapped parking spaces in Ohio: special license plates or a parking placard. An individual who owns or leases a motor vehicle may apply to the BMV for special license plates imprinted with the international symbol of access. To obtain the special plates, one must pay only the regular license fee. There are no additional costs for obtaining handicapped registration and plates, and the Plaintiffs in this case do not challenge the legality of the license plate program.

Disabled persons may also apply for a permanent handicapped windshield placard.[3] To obtain the permanent placard, qualified individuals and organizations must pay a $5.00 fee to the State of Ohio.[4] A motor vehicle displaying the placard is entitled to park in the spaces reserved for disabled persons. Since the ADA became effective as to public entities on January 26, 1992, the State of Ohio has collected in excess of $2.5 million for permanent placards.[5]

**C. Jurisdiction**

In order to address the merits of the case, the Court must first determine that it has jurisdiction over the case. Defendants contend that two separate barriers exist which prevent federal jurisdiction in this matter: the Eleventh Amendment to the United States Constitution, and the Tax Injunction Act.

**5.** The exact amount collected under the program to date is not enumerated in the parties' submissions to the Court. According to a discovery document prepared by the State, the total amount collected for permanent placards from 1992 through 1996 was approximately $2.5 million. Plaintiff's Appendix of Relevant Authority in Support of Plaintiff's Renewed Motion for Summary Judgment with Memorandum in Support, at Tab 12.

## 1. Eleventh Amendment Immunity

Defendants first allege that the Eleventh Amendment prohibits federal jurisdiction in this case. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the text of the Amendment appears to restrict only the Article III diversity jurisdiction of the federal courts, the Supreme Court has long "understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms." *Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)). This presupposition is that each state is a sovereign entity in our federal system and that it is inherent in this sovereignty not to be subject to the suit of an individual without its consent.[6] *Id.*

■ State sovereign immunity under the Eleventh Amendment, however, is not absolute: a state may consent to suit in federal court; and Congress may, under certain circumstances, abrogate a state's Eleventh Amendment immunity. Neither party in this case contends that the State of Ohio has consented to suit under the ADA, but the parties disagree over whether Congress effectively abrogated states' Eleventh Amendment immunity when it passed the ADA.

■ The Supreme Court recently set forth a two-part test for determining whether Congress has properly abrogated states' Eleventh Amendment immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). First, Congress must unequivocally express an intent to abrogate Eleventh Amendment immunity. Second, Congress must act pursuant to a valid

exercise of power. *Id.* 517 U.S. at 55, 116 S.Ct. 1114. The first question is easily answered in the affirmative, and the parties do not dispute that Congress, in enacting the ADA, unequivocally expressed its intent to abrogate Eleventh Amendment immunity. 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter.").

■ The parties disagree, however, as to whether Congress acted pursuant to a valid exercise of power. In *Seminole Tribe*, the Supreme Court held that only one constitutional provision, Section 5 of the Fourteenth Amendment,[7] provides Congress the authority to abrogate Eleventh Amendment immunity. *Id.* 517 U.S. at 58–72, 116 S.Ct. 1114 (overruling a prior Supreme Court decision which found authority to abrogate under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Discussing *Fitzpatrick*, the Court explained the rationale for finding that the Fourteenth Amendment confers upon Congress the power to abrogate:

> In Fitzpatrick, we recognized that the Fourteenth Amendment, by expanding federal power at the expense of state autonomy, had fundamentally altered the balance of state and federal power struck by the Constitution. We noted that § 1 of the Fourteenth Amendment contained prohibitions expressly directed at the States and that § 5 of the Amendment provided that "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." We held that through the Fourteenth Amendment, federal power extended to intrude upon the province of the Eleventh Amendment and therefore that § 5 of the Fourteenth Amendment allowed Congress to abrogate

---

6. The Supreme Court has held that the Eleventh Amendment also precludes a citizen from suing his or her own state in federal court, and thus the Amendment is applicable in the present case. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

7. Section 5 of the Fourteenth Amendment provides: "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend XIV, § 5.

the immunity from suit guaranteed by that Amendment.

*Id.* 517 U.S. at 59, 116 S.Ct. 1114 (internal citations omitted). Thus, the precise question presented is whether Congress acted pursuant to § 5 of the Fourteenth Amendment when it passed the ADA, thereby abrogating state immunity.

Neither the Supreme Court nor the Sixth Circuit[8] has directly ruled on this question since the issuance of the *Seminole Tribe* decision, and other courts are split on the issue. The clear majority of courts, however, including all four of the federal appellate courts to address the issue, has concluded that the ADA was enacted pursuant to the Fourteenth Amendment as required for abrogation of Eleventh Amendment immunity. *See Coolbaugh v. Louisiana,* 136 F.3d 430, 438 (5th Cir.1998); *Crawford v. Indiana Dep't of Corrections,* 115 F.3d 481, 487 (7th Cir.1997); *Clark v. California,* 123 F.3d 1267, 1270 (9th Cir.1997); *Kimel v. Florida Board of Regents,* 139 F.3d 1426 (11th Cir.1998). In addition to the appellate courts cited above, several District Courts, including the Southern District of Ohio, have held that Congress effectively abrogated states' immunity by enacting the ADA. *See e.g., Williams v. Ohio Dep't of Mental Health,* 960 F.Supp. 1276 (S.D.Ohio 1997) (Sargus, J.); *Niece v. Fitzner,* 941 F.Supp. 1497 (E.D.Mich.1996); *Muller v. Costello,* 997 F.Supp. 299 (N.D.N.Y. 1998); *Mayer v. University of Minnesota,* 940 F.Supp. 1474 (D.Minn.1996).

The Court is aware that at least two District Courts, including the Southern District of Ohio, have reached the opposite conclusion, finding that Congress did not abrogate states' sovereign immunity when it enacted the ADA. *See Nihiser v. Ohio Environmental Protection Agency,* 979 F.Supp. 1168 (S.D.Ohio 1997) (Graham, J.); *Brown v. North Carolina Division of Motor Vehicles,* 987 F.Supp. 451 (E.D.N.C.1997). However,

for the reasons stated below, the Court concurs with the majority view that the ADA abrogates states' Eleventh Amendment immunity.

■ As an initial matter, it is significant that Congress specifically intended the ADA to be an expression of its authority under the Fourteenth Amendment. It is for Congress in the first instance to determine what legislation is necessary to secure the guarantees of the Fourteenth Amendment, and its conclusions are entitled to much deference. *See City of Boerne v. Flores,* ⎯ U.S. ⎯, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997) (citing *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966)). In enacting the ADA, Congress specifically stated that is was Congress' purpose "to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment." 42 U.S.C. § 12101(b)(4). Congress' discretion is of course not unlimited. *See City of Boerne,* 521 U.S. at 507, 117 S.Ct. at 2172 (finding that Congress exceeded its authority under the Fourteenth Amendment in enacting the Religious Freedom Restoration Act). However, "Congress has broad discretion to legislate to enforce the core promises of the Fourteenth Amendment," and its judgments are entitled to great deference. *Wilson–Jones v. Caviness,* 99 F.3d 203, 209 (6th Cir.1996); *see Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 842 (6th Cir.1997) (holding that Congress abrogated states' sovereign immunity under the Equal Pay Act pursuant to the Fourteenth Amendment).

Furthermore, Congress made specific findings in the ADA that disabled persons are a discrete and insular minority who have faced restrictions and limitations and been subjected to a history of purposeful unequal treatment. 42 U.S.C. § 12101(a)(7). The ADA thus clearly invokes the Equal Protection Clause of the Fourteenth Amendment,[9]

---

8. In a brief, unpublished decision in 1996, the Sixth Circuit stated that Congress had abrogated states' Eleventh Amendment immunity in enacting the ADA. *Sears v. Kentucky,* 77 F.3d 483, 1996 WL 67769 (6th Cir.1996) (unpublished). The precedential value of this decision is limited, however, since it occurred prior to *Seminole*

*Tribe* and contained no analysis of the abrogation issue.

9. The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is "essentially a direction that all persons similarly situated

which limits states' ability to discriminate on the basis of classifications. It is undisputed that disabled persons are protected by the Equal Protection Clause. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Moreover, Congress' power under Section 5 of the Fourteenth Amendment is not limited to proscribing unconstitutional acts. In an effort to remedy or prevent constitutional violations, Congress may enact legislation proscribing conduct that falls beyond the reach of the Fourteenth Amendment's prohibitions, so long as there is a "congruence between the means used and the ends to be achieved." *City of Boerne*, 521 U.S. at 507, ——, 117 S.Ct. at 2163, 2169.

Defendants argue that Congress exceeded its authority under the Fourteenth Amendment in enacting the ADA. Defendants contend that the ADA, unlike other anti-discrimination laws, mandates preferential treatment for disabled persons, treatment which goes beyond the neutral guarantee of equal protection. *See Nihiser*, 979 F.Supp. 1168, 1174.

This Court agrees, however, with the clear majority of courts in finding that the ADA is within the scope of appropriate legislation under the Equal Protection Clause. *See Clark*, 123 F.3d at 1270; *Coolbaugh*, 136 F.3d at 438; *Crawford*, 115 F.3d at 487; *Williams*, 960 F.Supp. at 1282. The ADA represents "Congress' considered efforts to remedy and prevent what it perceived as serious, widespread discrimination against the disabled." *Coolbaugh*, 136 F.3d at 438. Like other anti-discrimination statutes, the ADA is a valid exercise of Congress' power under Section 5 of the Fourteenth Amendment to enact legislation to enforce the substantive guarantee of equal protection. By prohibiting discrimination against disabled persons, the ADA is plainly adapted to and consistent with the Constitution, which seeks to provide all citizens with equal protection and equal treatment under the law. *See Clark*, 123 F.3d at 1270 (finding that the ADA does not provide remedies "so sweeping that they exceed the

should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105

harms that [it] is designed to redress"); *Coolbaugh*, 136 F.3d at 438 (same). Since Congress clearly intended to abrogate states' Eleventh Amendment immunity and acted pursuant to the Fourteenth Amendment, this Court finds that the ADA represents an effective abrogation of the Eleventh Amendment. Consequently, Defendants' Motion to Dismiss based upon sovereign immunity is hereby **DENIED.**

### 2. Tax Injunction Act

■ Defendants also contend that federal jurisdiction in this matter is prohibited by the Tax Injunction Act. The Tax Injunction Act provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Tax Injunction Act is based on principles of federalism and is designed to prevent a federal court from interfering with the administration of a state tax system. *See Wright v. McClain*, 835 F.2d 143, 144 (6th Cir.1987) ("The Tax Injunction Act is an expression of congressional purpose to promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising.")

■ The jurisdictional impediment created in the Tax Injunction Act is not, however, absolute. For the Act to apply, the assessment at issue must be a "tax." The parties in the present case disagree over whether the $5.00 fee required for a parking placard constitutes a "tax." Whether a particular assessment is a "tax" under the Act is a question of federal law. *See Wright v. McClain*, 835 F.2d at 144. In addressing this question, federal courts have sought to determine whether the assessment in question "is for revenue raising purposes or merely a regulatory or punitive levy." *Id.* 835 F.2d at 144–45. Courts have generally "sketched a spectrum with a paradigmatic tax at one end and a paradigmatic fee at the other." *San Juan Cellular Telephone Co. v.*

S.Ct. 3249, 87 L.Ed.2d 313 (1985).

*Public Service Commission of Puerto Rico,* 967 F.2d 683, 685. Although the line between a "tax" and a "fee" can be a blurry one, certain distinctions emerge from the case law between a classic tax and a classic fee:

> [T]he classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

*Home Builders Association of Mississippi, Inc. v. Madison,* 143 F.3d 1006, 1011 (5th Cir.1998); *see also, Bidart Brothers v. California Apple Commission,* 73 F.3d 925 (9th Cir.1996); *City of Chattanooga v. BellSouth Telecommunications, Inc.,* 1 F.Supp.2d 809 (E.D.Tenn.1998).

██ In the present case, Defendants argue that the placard surcharge is more like a tax than a fee, and thus the Tax Injunction Act divests this Court of jurisdiction. The Court disagrees. First, the Court notes that the placard surcharge is termed a "fee" in the statute. Ohio Rev.Code § 4503.44(D). While this label is not dispositive, the circumstances and intended use of the surcharge reveal that it is not a "tax" under the Tax Injunction Act. *See Chattanooga,* 1 F.Supp.2d at 813 ("When courts are faced with cases that lie near the middle of this spectrum, the courts tend to emphasize and focus on the revenue's ultimate use and the reason why the revenue is being taken or collected."). Defendants argue that the purpose of the fee is to raise funds for the general benefit of the community, and thus it is a tax. In support of this argument, Defendants note that the fees collected by the

registrars are deposited "into the state treasury to the credit of the state bureau of motor vehicles fund." Ohio Rev.Code § 4503.44(L). The fact that monies are directed to the BMV fund, however, does not establish that the fees were intended as a general revenue-raising measure.

Rather, the nominal surcharge for the parking placard appears more like a user fee designed to cover the State's costs of issuing the placards. *See Folio v. City of Clarksburg,* 134 F.3d 1211, 1217 (4th Cir.1998) ("A user fee, by contrast, is a payment given in return for a government provided benefit and is tied in some fashion to the payor's use of the service.") (internal quotations omitted). The fee is paid by and provides a benefit to only those disabled persons who apply for a parking placard, not the public at large. The deposition testimony of Mitchell Brown, Director of the Ohio Department of Public Safety,[10] further supports the conclusion that the placard fee is more properly viewed as a user fee rather than a tax. Mr. Brown confirmed, and the Defendants have not disputed, that the $5.00 amount was chosen as an approximation of the costs of the program.[11] Thus, the placard surcharge is not a "tax" for purposes of the Tax Injunction Act, because it is charged only to the applicants for a placard and designed to cover the regulatory costs of administering the program. *See San Juan,* 967 F.2d at 686 (stating that one purpose of a regulatory fee is to defray the costs of the program); *Union Pacific Railroad Co. v. Public Utility Commission of Oregon,* 899 F.2d 854, 856 (9th Cir.1990) (finding an assessment to be a fee because it helped defray the costs of performing the regulatory duties of the agency); *Wright v. McClain,* 835 F.2d at 145 (stating that an assessment is not a tax if it is "merely a regulatory or punitive levy"). Thus, the Tax Injunction Act presents no impediment to federal jurisdiction,

---

**10.** The Department of Public Safety includes the Bureau of Motor Vehicles, as well as several other state agencies.

**11.** The following is an excerpt of Mr. Brown's deposition at page 18–19:

Question: Do you have a recollection as to how the five dollar charge was initially determined?

Answer: My best recollection of the five dollars was that it was a collective average of what it would cost for the State to purchase these things in large quantities ... our costs came out to approximately five dollars to be passed along to the individual who wished to have the placards.

and Defendants' Motion in this regard is **DENIED.**

### D. The Merits: Does Ohio's Handicapped Parking Placard Program Violate the ADA?

■ The Court now turns to the question of whether Ohio's program of issuing parking placards violates the ADA. As outlined above, the ADA requires the creation of special parking places for disabled persons, in order to ensure accessibility to places of public accommodation. *See* 28 C.F.R. § 36.304; 28 C.F.R. pt. 36, Appendix A, *ADA Accessibility Guidelines for Buildings and Facilities; Kornblau v. Dade County,* 86 F.3d 193, 194 (11th Cir.1996); *Petillo v. California Dep't of Motor Vehicles,* Case No. CV96–5569JSL, (C.D.Cal. June 4, 1997). Furthermore, ADA regulation prohibit public entities from imposing a surcharge on disabled persons to cover the costs of an ADA-mandated measure. 28 C.F.R. § 35.130(f). In brief, this Court finds that Ohio's imposition of a $5.00 fee for a permanent handicapped parking placard is an illegal surcharge under the ADA.

ADA regulations clearly prohibit a state from charging disabled persons to pay a user fee to cover the costs of ADA-mandated accommodations. The specific regulation states:

A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as provisions of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act.

28 C.F.R. § 35.130(f). Ohio's program runs afoul of this prohibition. To obtain a removable placard, a disabled Ohio resident must pay a $5.00 fee to the State of Ohio. *See* Ohio Rev.Code § 4503.44. Only disabled persons seeking the placard are required to pay the fee, and the funds collected cover the costs of the program. *See* Brown Depo. at 18–19. Ohio's fee is thus exactly the type of surcharge prohibited by the ADA. The illustration which follows the above-quoted regulation further supports this conclusion:

ILLUSTRATION: A community college provides interpreter services to deaf students, removes a limited number of architectural barriers, and relocates inaccessible courses and activities to more accessible locations. The college cannot place a surcharge on either an individual student with a disability (such as a deaf student who benefited from interpreter services) or on groups of students with disabilities (such as students with mobility impairments who benefited from barrier removal). It may, however, adjust its tuition or fees for all students.

*Americans with Disabilities Act Title II Technical Assistance Manual,* at § 3.5400. Ohio's surcharge on mobility-impaired Ohio residents who seek access to handicapped parking accommodations is clearly akin to this illustration, and this Court finds that the fee violates the ADA.

The Court notes that three other courts have addressed the legality of nearly identical parking placard programs in other states. Each court concluded that the fee violated the ADA, as embodied in 28 C.F.R. § 35.130(f). *See Petillo v. California,* Case No. CV96–5569JSL (C.D.Cal. June 4, 1997); *McGarry v. Director, Dep't of Revenue, State of Missouri,* 7 F.Supp.2d 1022 (W.D.Mo. 1998); *Miller v. State of North Dakota,* Case No. 96–C–1988 (Burleigh Cty. District Court Oct. 10, 1997).

The Defendants contend that the placard program does not violate the ADA because the placards are "only one alternative available to disabled Ohio drivers to permit them to utilize-handicapped-reserved parking spaces." Defendants' Motion, at 12. The removable placard is "an *optional* means of identifying a vehicle authorized to park in handicapped spaces, in addition to or in lieu of the license plates." *Id.* at 14. Special license plates represent a "no-cost" alternative for disabled Ohio drivers, since the cost is identical to regular registration. Therefore, Defendants argue, disabled Ohio drivers are not required to pay for placards in order to utilize the parking accommodations.

The Defendants' argument is without merit. As noted by the Plaintiffs, this argument

is premised upon the assumption that handicapped plates and the handicapped placard are equivalent, interchangeable alternatives. They are not. First, in order to obtain special license plates, one must own or lease a vehicle. As Plaintiffs point out, not all disabled Ohio residents own cars. For those who do not own a vehicle, the removable placard is not simply an "option" or a luxury, as Defendants suggest: it is necessary for them to access the ADA-mandated parking places. The ADA protects people, not cars. *See* 42 U.S.C. § 12132 (stating that "no qualified individual with a disability" shall be excluded from participation or subjected to discrimination.). The State cannot, consistent with the ADA, provide no-cost access to special parking only to those disabled persons who own cars. *See McGarry,* 7 F.Supp.2d at 1027–28 ("Discrimination against the disabled who do not own automobiles is not permitted."); *Petillo,* at 5. The special license plates simply do not provide access to reserved parking for all of the individuals entitled to such parking under the ADA.

Second, special license plates do not provide the same freedom of mobility provided by a placard and required by the ADA. The problem addressed by exclusive parking areas for disabled persons is the difficulty of getting safely and efficiently from a parking lot to a building or other destination. Both disabled drivers and passengers face this difficulty. Yet the special license plates are not portable. The plates cannot be transferred to a car in which a disabled person is a passenger, or to a car which the disabled person may be borrowing or renting. The purpose of providing reserved parking is to provide disabled persons with access to places of public accommodation. The license plate "option" alone provides meaningful access to only a subset of disabled Ohioans (those who drive their own cars 100% of the time), and is thus at odds with the ADA. *See Petillo,* at 5–6 (rejecting the "option" argument and finding the provision of license plates alone to violate the ADA); *McGarry,* 7 F.Supp.2d at 1027–28 (same).

The removable placards solve the problem of providing disabled persons with the access to parking accommodations required by the ADA. Public entities may not, however, pass on the costs of compliance to the disabled as a condition for the enjoyment of ADA-mandated measures. For these reasons, this Court finds that Ohio's $5.00 fee for permanent handicapped windshield placards is an impermissible surcharge under the ADA.

**E. The Definition of the Class**

■■ By prior order of this Court, the following class was certified in this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure:

> All Ohio residents or qualified organizations under Chapter 4503 of the Ohio Revised Code who purchased a permanent handicapped windshield placard or a renewal or replacement handicapped windshield placard enabling use of parking accommodations set aside for the exclusive use of persons with disabilities from January 26, 1992, to the present. The class also includes all Ohio residents or qualified organizations under Chapter 4503 of the Ohio Revised Code who will be required to purchase these placards in the future until declaratory and injunctive relief is granted.

Defendants object to this class definition, arguing that only those Ohio residents who are disabled within the meaning of the ADA should be entitled to reimbursement of the application fee. The Court agrees but does not consider it necessary to alter the class definition.

The ADA covers individuals who have a physical or mental impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102. "Major life activities" is defined broadly to include such things as walking, seeing, breathing and working. *See* 29 C.F.R. § 1630.2(i). "Substantially limits" is defined as being unable to perform a major life activity that the average person in the general population can perform, or being significantly restricted as to the condition, manner or duration under which he or she can perform a major life activity. 29 C.F.R. § 1630.2(j).

The Ohio statute limits eligibility for handicapped parking placards to persons "with a disability that limits or impairs the ability to walk." Ohio Rev.Code § 4503.44. This mo-

bility-impairment is then further defined in the statute, and it includes persons who meet one of several measures of impairment in walking, breathing, etc. Comparing the definitions of disability in the ADA and the Ohio statute, this Court finds that all persons falling within Ohio's definition of "persons with a disability that limits or impairs the ability to walk" also fall within the ADA's definition of persons with a "disability." Therefore, all the Plaintiffs in this case are entitled to relief under the ADA,[12] and thus the class definition need not be altered.

## III. CONCLUSION

For the reasons stated above, this Court finds that Ohio's $5.00 fee for the issuance of a permanent handicapped windshield placard violates the ADA. Since there are no disputes of material facts, and the Plaintiffs are entitled to judgment as a matter of law, Plaintiff's Motion for Summary Judgment is hereby **GRANTED**, and Defendants' Motion to Dismiss or for Summary Judgment is hereby **DENIED**.

The Court hereby **ORDERS** the following relief:

(1) The Court hereby **DECLARES** that the State of Ohio's statutory scheme of requiring a $5.00 fee for the issuance of a permanent handicapped windshield placard, codified at Ohio Rev.Code § 4503.44, violates the Americans with Disabilities Act;

(2) the State of Ohio is hereby **ENJOINED** from requiring payment from future applicants for permanent handicapped windshield placards; and

(3) the State of Ohio shall reimburse Plaintiffs for past payments of the illegal surcharge.

The Court will contact the parties to set a schedule for resolving any remaining issues, including: the determination of the exact amount of damages owed by the State; no-

tice to the class; an award of attorney's fees; and any other unresolved issues.

**IT IS SO ORDERED.**

---

12. Persons bringing suit under Title II of the ADA are entitled to the full range of relief. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a; 42 U.S.C. § 2000d; *Johnson v. City of Saline*, 151 F.3d 564, 1998 WL 442669, at *9 (6th Cir.1998) (stating

that compensatory damages are available under Title II of the ADA); *Niece v. Fitzner*, 922 F.Supp. 1208 (E.D.Mich.1996) (stating that the full range of remedies is available under Title II of the ADA).