**Michelle DUPREY, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**STATE of CONNECTICUT, DEPARTMENT OF MOTOR VEHICLES, Defendant.**

**No. 3:96–cv–1679 (GLG).**

United States District Court,
D. Connecticut.

Nov. 17, 1998.

Gary E. Phelan, Garrison, Phelan, Levin–Epstein, Chimes & Richardson, P.C., New Haven, CT, for Plaintiff.

Alan N. Ponanski, Attorney General's Office, Department of Transportation, Contract Litigation & Condemnation, Hartford, CT, for Defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 56, defendant the State of Connecticut Department of Motor Vehicles ("DMV") moves for summary judgment. Plaintiff Michelle Duprey, individually and on behalf of all others similarly situated, cross-moves for summary judgment. For the following reasons, we DENY defendant's motion (Doc. # 10) and GRANT plaintiff's motion (Doc. # 12).

## BACKGROUND

The following facts are not in dispute, and both parties agree this case should be resolved by summary judgment because the complaint raises only legal issues.

Plaintiff has a genetic disability known as osteogenesis imperfecta that causes severe curvature of the spine and long bones, easy bruising, short stature, and multiple fractures. Due to this condition, plaintiff is limited in the major life activity of walking. Although she can drive, she requires a modified vehicle to accommodate her disability. Since childhood, she has purchased removable windshield placards from the DMV to access parking spaces reserved for disabled persons. On August 16, 1996 she paid $5.00 to renew her placard, and she claims that she will renew her placard every five years as required by law.

In Connecticut, a person with a disability impairing or limiting the ability to walk may apply for special license plates or a removable windshield placard to access parking

spaces reserved for persons with disabilities.[1] C.G.S.A. § 14–253a (1996). The DMV is authorized to "accept applications and renewal applications for special license plates *and* removable windshield placards upon receipt of a fee of five dollars. . . ." C.G.S.A. § 14–253a(b) (1996); *see* Conn. Agencies Regs. § 14–253a–2 (1996). In this case, plaintiff challenges only the provision requiring a $5.00 application fee for placards.

If a person does not have special license plates, he or she may apply for a second removable windshield placard by paying an extra $5.00 application fee. C.G.S.A. § 14–253a(d) (1996); Conn. Agencies Regs. § 14–253a–6(b) (1996). It is also possible to obtain both special license plates and a removable windshield placard, but a person would need to apply for both and therefore would pay $10.00 total in application fees. Removable windshield placards expire five years after the month of issuance. C.G.S.A. § 14–253a(a)(2) (1996); Conn. Agencies Regs. § 14–253a–6(a) (1996). To renew, a person must complete a renewal application and pay a $5.00 application fee. C.G.S.A. § 14–253a(b) (1996); Conn. Agencies Regs. § 14–253a–7 (1996).

Both parties assert that a person is *not* required to pay a $5.00 fee if he or she wants only special license plates. Indeed, defendant persistently argues that a disabled person has the option of either paying $5.00 for a placard or obtaining special license plates at no extra charge, beyond the cost of obtaining license plates in general. Our reading of the Connecticut statute and regulations is otherwise. Section 14–253a(b) specifically states that the $5.00 fee is collected with applications for "special license plates and removable windshield placards." *See* Conn. Agencies Regs. § 14–253a–2(c) (1996). Thus, the $5.00 application fee must be paid before a disabled person can receive special license plates or a placard.[2]

Plaintiff commenced this action individually and on behalf of all others similarly situated claiming that the $5.00 application fee for removable windshield placards violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12165 (1996). She seeks declaratory and injunctive relief, repayment or reimbursement to each class member of any application fees paid since the ADA's effective date,[3] and attorneys' fees and costs. The issue of class certification has not yet been presented to this Court.

## DISCUSSION

■ Title II prohibits a public entity from discriminating against disabled persons, 42 U.S.C. § 12132,[4] but this provision sets forth only a general definition of discrimination. *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir .1997); *see*

---

**1.** The regulations implementing Title III, which apply to public accommodations, provide that designated parking spaces must be created near building entrances to ensure that disabled persons have access to places of public accommodation, when it is easily accomplishable and can be done without much difficulty or expense. 28 C.F.R. §§ 36.304(a), (b)(18) & (c)(1) (1996); *see* ADA Accessibility Guidelines for Buildings and Facilities, 28 C.F.R. pt. 36, app. A, §§ 4.1.2(5), 4.6 & A4.6.3 (1996). The Connecticut statutes set forth design specifications and specific requirements on how many parking spaces must be reserved for disabled persons depending on the capacity of the parking area. C.G.S.A. §§ 14–253a(g) & (h) (1996); *see* BOCA National Building Code § 512.3 & Table 512.3 (11th ed.1990), *supplemented by* BOCA National Building Code Accumulative Supp. (1992), and *supplemented by* State Building Code, Connecticut Supp. (1994).

**2.** Plaintiff also argues that a $5.00 fee is required to obtain a replacement placard if the placard is lost, stolen, or destroyed. However, the regula-

tions provide that the DMV shall issue a replacement placard if a person certifies under penalty of false statement that the placard was lost, stolen, mutilated, or destroyed. Conn. Agencies Regs. § 14–253a–9(b) (1996). Unlike the other statutory and regulatory provisions, there is no specific requirement that a person pay a $5.00 fee to replace a placard that was lost, stolen, or destroyed. Thus, we conclude that the $5.00 application fee does not apply when a disabled person seeks a replacement placard for one that was lost, stolen, or destroyed.

**3.** The ADA became effective on January 26, 1992.

**4.** Section 12132 provides that:

[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

H.R.Rep. No. 101–485(II), at 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367 (stating that the "Committee has chosen not to list all the types of actions that are included within the term 'discrimination' "). As part of Title II, Congress delegated authority to the Department of Justice to promulgate regulations implementing the ADA ("DOJ regulations"). 42 U.S.C. § 12134(a); *see* 28 C.F.R. pt. 35 (implementing Title II); *see also* 28 C.F.R. pt. 36 (implementing Title III). The DOJ regulations expound upon Title II's general prohibition against discrimination on the basis of disability. 28 C.F.R. § 35.130 (1996). The DOJ regulations "are entitled to controlling weight unless they are 'arbitrary, capricious, or manifestly contrary to the statute.'" *Innovative Health Sys.*, 117 F.3d at 45 n. 8 (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

■ At issue in this case is one of the bans which provides:

> [a] public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the non-discriminatory treatment required by the Act or this part.

28 C.F.R. § 35.130(f) (1996). In a technical assistance manual for Title II, the DOJ further explains that "[a]lthough compliance may result in some additional cost, a pubic entity may not place a surcharge only on particular individuals with disabilities or groups of individuals with disabilities to cover these expenses." DOJ, *The Americans With Disabilities Act Title II Technical Assistance Manual* § II–3.5400, at 12–13 (1993

& Supp.1994). This manual is "given substantial deference unless another reading is compelled by the regulation's plain language." *Innovative Health Sys.*, 117 F.3d at 45 n. 8.

Plaintiff argues that the $5.00 application fee charged by the DMV to obtain placards is discriminatory because the ADA prohibits states from placing a fee only on disabled persons as a condition to gaining access to designated parking spaces which are required measures under the ADA. Plaintiff relies on several rulings that have addressed the issue of other states' placard programs. All of these courts found that a public entity which imposes a fee to obtain removable windshield placards violates the ADA. *Thrope v. Ohio*, 19 F.Supp.2d 816, 824–25 (S.D.Ohio 1998); *McGarry v. Director, Dep't of Revenue of Missouri*, 7 F.Supp.2d 1022, 1026–29 (W.D.Mo.1998); *Dare v. California, Dep't of Motor Vehicles*, No. 96–cv–5569, slip op. at 1–7 (C.D.Cal. May 30, 1997) (Letts, J.); *Miller v. North Dakota Dep't of Transp.*, No. 96–C–1988, slip. op. at 2–5 (N.D.Dist.Ct. Burleigh County Oct. 10, 1997) (Hagerty, J.).[5]

For example, in *Thrope* the Ohio Bureau of Motor Vehicles had collected a $5.00 fee from disabled persons who sought to obtain removable windshield placards. The court found that the "ADA regulations clearly prohibit a state from charging disabled persons to pay a user fee to cover the costs of ADA-mandated accommodations." 19 F.Supp.2d at 824. The court reasoned that "[o]nly disabled persons seeking the placard are required to pay the fee, and the funds collected cover the costs of the program." *Id.* In deciding that the fee was discriminatory, the court relied on the following example given by the DOJ:

> A community college provides interpreter services to deaf students, removes a limited number of architectural barriers,

---

**5.** As further support for her position, plaintiff cites a recommended ruling in *Thompson v. Colorado*, Civ. No. 96–S–1791, slip op. (D.Colo. Nov. 25, 1997). In the recommended ruling, Magistrate Judge Coan found that the State of Colorado could impose a fee to cover the cost of issuing placards only if the fees were borne equally by disabled and non-disabled persons. Slip op. at 20. Because the state placed the fee

only on disabled persons, the Magistrate concluded that the fee violated the ADA. However, objections to the recommended ruling were filed and District Court Judge Sparr is holding a hearing on these objections on December 18, 1998. In light of the objections and pending hearing, we decline to attach any weight to the recommended ruling.

and relocates inaccessible courses and activities to more accessible locations. The college cannot place a surcharge on either an individual student with a disability (such as a deaf student who benefited from interpreter services) or on groups of students with disabilities (such as students with mobility impairments who benefited from barrier removal). It may, however, adjust its tuition or fees for all students.

*Id.* at 824 (quoting DOJ, *The Americans With Disabilities Act Title II Technical Assistance Manual* § 11–3.5400, at 12–13). In conclusion, the *Thrope* court stated that "Ohio's surcharge on mobility-impaired Ohio residents who seek access to handicapped parking accommodations is clearly akin to this illustration, and this Court finds that the fee violates the ADA." *Id.*

■ The *Thrope* court did not explain how it determined that the fee constituted a surcharge, other than to tersely state that the "$5.00 fee for a permanent handicapped parking placard is an illegal surcharge under the ADA." *Id.* Similarly, none of the other decisions in *McGarry, Dare,* or *Miller* specifically state why the fee for placards is a surcharge. In contrast, we find that the following elements must be established under Title II to strike down Connecticut's application fee to obtain removable windshield placards: (1) that the application fee charged by the DMV constitutes a surcharge; (2) that the fee is imposed only on disabled persons; and (3) that the fee is used to cover the costs of ADA-mandated measures.

## I. Definition of Surcharge

To determine whether the $5.00 application fee is a surcharge, plaintiff urges this Court to adopt a functional definition of "surcharge" based on how the term is used in 28 C.F.R. § 35.130(f) (1996). Plaintiff asserts that the "best evidence of the meaning of the word 'surcharge' is provided through the context in which it is used...." Pl.'s Mem. at 12. According to plaintiff, whether a fee is a surcharge depends on who pays the fee and on the fee's purpose. We decline to accept plaintiff's definition because it bundles the surcharge issue with the separate issues of whether the fee was imposed only on disabled persons and whether the fee was used to cover the costs of ADA-mandated measures.

Conversely, defendant contends that the application fee is not a surcharge because it is not an unusual, excessive, or discriminatory charge. Defendant refers to Black's Law Dictionary at 751 (5th ed.1983), which defines surcharge as an "additional cost." [6] Defendant also relies on the definition of surcharge set forth in *People v. Fulvio,* 135 Misc.2d 93, 95, 514 N.Y.S.2d 594, 596 (N.Y.City Crim.Ct. 1987). In *Fulvio,* the court defined surcharge as: "1) ... to charge ... an extra or additional fee, usually for some special service ..., [or 2) ] a charge in excess of the usual ... amount ... an additional and usually excessive charge...." 135 Misc.2d at 95, 514 N.Y.S.2d at 596 (quoting Webster's Third International Dictionary). Defendant argues that the $5.00 application fee is not excessive and therefore cannot constitute a surcharge.

In Connecticut, one court has interpreted surcharge to mean "a burden greater than the ordinary one, or greater than can well be borne; an excessive burden, load or charge." *Braithwaite v. Town of Wallingford,* Nos. 262168, 262169, 1991 WL 126464, at *29 n. 2 (Conn.Super. June 28, 1991) (quoting 83 C.J.S. at 910 and also quoting Webster's Third International Dictionary). In other states, courts have used the following definitions of surcharge: "an additional fee," *Sausalito Pharmacy, Inc. v. Blue Shield of California,* No. C–78–2196, 1980 WL 1977, at *5 (N.D.Cal. May 12, 1980) (quoting the definition of surcharge in California Administrative Code § 1300.45(p)); an "additional or extra charge which is sometimes defined as an excessive price," *Ubel v. Minnesota,* 547 N.W.2d 366, 368 (Minn.Sup.Ct.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 686, 136 L.Ed.2d 610 (1997); and an "additional sum"

---

6. In the Sixth Edition, surcharge is defined as "[a]n overcharge; an exaction, impost, or encumbrance beyond what is just and right, or beyond one's authority or power." It is also

defined as "[a]n additional tax or cost onto an existing tax, cost, or charge." Black's Law Dictionary 1441 (6th ed.1990).

or "additional burden," *State v. James,* 217 Wis.2d 291, 577 N.W.2d 388, 389 (Ct.App. 1998) (unpublished disposition) (quoting the American Heritage Dictionary 1222–23 (2d ed.1985)). Finally, according to Webster's Third New International Dictionary 2299 (1966), surcharge means "1a: to charge too much: subject to an excess or burdensome charge or tax; b: to charge (one) an extra or additional fee usu. for some special service...." Also, the homonym of surcharge means "2a: a charge in excess of the usual or normal amount: an additional tax, cost, or impost ... 3: an additional and usu. excessive charge, load, burden, or supply." *Id.*

In many instances, meeting the "surcharge" element will be *pro forma* if the case involves a fee that was placed only on disabled persons in addition to a fee that is paid by disabled and non-disabled persons alike. The classic example under Title III is a doctor's office that charges deaf patients for the use of sign language interpreters. The fee is added to a standard charge for the doctor's services which is set without regard to a patient's disabilities, and therefore the fee for the interpreter's services is a surcharge. *See* DOJ Opinion Letter from Joan A. Magagna, Deputy Director, Civil Rights Division to Leonard Perez, M.D., http://www.usdoj.gov/crt/foia/tal117.txt (Jun. 29, 1992).

Accordingly, we find that defendant's proposed definition of surcharge (an extra or additional cost) is underinclusive. For example, where a public entity sponsors a free event, but where a wheelchair user is charged $5.00 to use a ramp to access the building where the event is held, the $5.00 fee would fall outside the ADA's protection because it was not imposed on top of a base fee for the event. Thus, we conclude that a fee is a surcharge if it is in excess of a usual or normal amount, even if this amount is zero. Consequently, we find that the $5.00 application fee for placards is a surcharge because it exceeds the amount generally paid by all those using parking spaces, whether

the parking spaces are free or metered, or are located in a pay-parking lot.

Nevertheless, defendant contends that the $5.00 application fee should not be considered a surcharge because disabled persons who have placards receive benefits that are not available to non-placard holders. The one and only benefit cited by defendant is that vehicles displaying a placard may park in any area where parking is legally permissible regardless of any time limitation, and shall not be fined for overtime parking. C.G.S.A. § 14–253a(e) (1996); Conn. Agencies Regs. § 14–253a–13 (1996). This benefit exceeds the floor of rights set forth in the ADA, and there is no provision requiring Connecticut to provide free parking to disabled persons. *See* 28 C.F.R. § 35.130(c) (1996).[7] For example, in an opinion letter the DOJ stated that a public accommodation can meter accessible parking spaces reserved for disabled persons as long as it also meters nonaccessible spaces in the same area. DOJ Opinion Letter from John L. Wodatch, Chief Public Access Section to Charlotte Halsema, Indiana University Medical Center Hospital Administration, http://www.usdoj.gov/crt/foia/tal412.txt (Nov. 19, 1993).

Moreover, the benefit of unlimited parking is linked to a disabled person's right to have access to designated parking spaces. In a contrasting situation, the DOJ found that imposing a fee to obtain optional parking benefits did not appear to be discriminatory. That opinion letter involved a city ordinance allowing certain individuals, including disabled persons, to purchase curbside parking rights for $25.00 per month entitling the buyer to park for up to eight hours per day in the downtown area. The DOJ found that the city was offering disabled persons a service not generally available to the public. The DOJ further found that the $25.00 fee was not discriminatory because it was less than the cost of parking in a municipal parking garage for a similar amount of time. DOJ Opinion Letter from John L. Wodatch, Director, Public Access Section to Tom Gallagher, Wyoming Department of Employment,

---

7. Section 35.130(c) provides:
[n]othing in this part prohibits a public entity from providing benefits, services, or advan- tages to individuals with disabilities, or to a particular class of individuals with disabilities beyond those required by this part.

http://www.usdoj .gov/crt/foia/tal218.txt (Nov. 3, 1992). Accordingly, we find that the $5.00 application fee is a surcharge even though placard holders in Connecticut receive an additional benefit of unlimited parking. We note that Connecticut could separate the unlimited parking program from the placard program, thereby enabling the DMV to charge a fee to obtain unlimited parking rights.

## II. Imposing a Fee Only on Disabled Persons

The ADA and the DOJ regulations are silent as to how public entities should finance changes that are required to be made in order to comply with Title II. DOJ Opinion Letter from James P. Turner, Acting Assistant Attorney General, Civil Rights Division to Senator Harris Wofford, http://www.usdoj.gov/crt/foia/cltr128.txt (Mar. 15, 1994) (stating that "[a]lthough the ADA does not mandate any particular method of financing required changes, it has generally been assumed that such changes would be financed through the covered entity's general revenues, not by imposing special costs on any individual. . . ."). The only relevant provision prohibits a public entity from imposing a surcharge solely on a disabled individual or a group of disabled persons. 28 C.F.R. § 35.130(f) (1996). Surcharges are permitted, however, if they are borne by an entire class of individuals that uses a particular service, or participates in or attends a program or event.

One DOJ opinion letter involved the issue of whether a public entity could charge deaf individuals for the provision of interpreters at meetings attended by deaf and non-deaf persons, even though there was generally no entrance fee for any attendees. Where the provision of auxiliary aids and services, including qualified interpreters, was required to ensure effective communication for disabled persons, the DOJ stated:

> [t]he cost of such services may not be financed by surcharges placed on particular individuals, or groups of individuals, with disabilities. Charges may, however, **be spread out among** *all* **of the clients of a place of public accommodation.**

For example, while a doctor may not raise his fee exclusively for an individual who requires an interpreter, the doctor **may raise his fee generally for** *all* **his patients,** so that the additional expense of providing an interpreter is covered. Similarly, while a place of public accommodation may neither impose a surcharge solely on meeting participants who are deaf nor charge a fee solely for those meetings where there will be deaf attendees, **the place of public accommodation could charge an entrance fee for** *all* **its meetings,** regardless of whether or not there would be deaf participants, so that the expense of providing interpreters for particular meetings would be covered.

DOJ Opinion Letter from James P. Turner, Acting Assistant Attorney General, Civil Rights Division to Congressman Thomas H. Andrews, http://www.usdoj.gov/crt/foia/tal371.txt (Aug. 12, 1993) (emphasis added); *see* DOJ Opinion Letter from Joan A. Magagna, Deputy Director, Civil Rights Division to Leonard Perez, M.D., http://www.usdoj.gov/crt/foia/tal117.txt (Jun. 29, 1992) (stating that a health care provider cannot charge a patient with a disability for the cost of providing a particular auxiliary aid or service, but that these costs "can be treated as any other overhead costs and passed along to all patients").

The placard program is similar to the above example because oftentimes there is no base fee for individuals to park (setting aside the issue of metered parking or pay-parking lots), yet disabled persons are required to pay $5.00 to apply for a removable windshield placard so they can park in designated spaces. In the DOJ example, the DOJ proposed a solution whereby an entrance fee could be imposed on *all* persons, deaf and non-deaf, at *all* public meetings even if no deaf individuals attended some of the meetings. If the DMV wants to pass on the costs of providing placards, rather than absorbing the costs itself, it must pass the cost on to all parkers, and not just those disabled individuals protected by the ADA.

Nevertheless, defendant asserts that the $5.00 application fee is not imposed solely on disabled persons. Rather, defendant argues

that Connecticut issues removable windshield placards to a broader class of persons than those defined as "qualified individuals with a disability" and protected under the ADA. According to defendant, because the state imposes the application fee upon ADA-protected disabled persons and non-ADA protected disabled persons, the DMV has not discriminated against ADA-protected individuals within the meaning of 42 U.S.C. § 12132.

■ We reject defendant's argument because the application fee is not placed on all parkers. Rather, the following persons in Connecticut may apply to obtain a removable windshield placard:

(1) any person who is blind ...; (2) any person with disabilities which limit or impair the ability to walk ...; (3) any parent or guardian of any blind person or person with disabilities who is under eighteen years of age at the time of application; and (4) any organization which meets criteria established by the commissioner and which certifies to the commissioner's satisfaction that the vehicle for which a plate or placard is requested is primarily used to transport blind persons or persons with disabilities which limit or impair their ability to walk.

C.G.S.A. § 14–253a(b) (1996). The statute refers to 23 C.F.R. § 1235.2 (1996) for the definition of a person with disabilities that limit or impair the ability to walk. *Id.* Under defendant's interpretation, a state could allow one extra non-ADA protected individual to receive a removable windshield placard and claim that it was not placing a surcharge only on "a particular individual with a disability or any group of individuals with disabilities." Moreover, we find that the class of persons eligible to obtain placards, including the parents or guardians of underage disabled persons, is necessary to ensure that all ADA-protected disabled persons have access to reserved parking spaces and thus are not subjected to discriminatory treatment. Again, we stress that Connecticut is welcome to increase parking rights by extending the protections of section 14–253a to more persons that those considered qualified individuals with disabilities under the ADA. The

DMV could place a surcharge on non-ADA protected individuals. Yet, it cannot impose a surcharge on those individuals listed in section 14–253a who are also considered qualified individuals with disabilities under the ADA.

### III. Covering the Costs of ADA–Mandated Measures

Defendant does not dispute that the application fee is used to cover the costs of the placard program. Yet, defendant argues that even if the application fee is considered a surcharge, it has not violated the ADA because removable windshield placards are not required measures under the ADA. Indeed, defendant asserts that "Connecticut does not charge any fee for the actual use of preferential parking spaces or to recoup the costs incurred in providing the space themselves." Def.'s Reply Mem. at 5. Finally, defendant claims that neither the ADA nor the DOJ regulations require "Connecticut to implement a law enforcement program to curb abuse of disability parking." *Id.* at 49.

Defendant correctly notes that neither the ADA nor the DOJ regulations suggest how states should enforce the system of designating parking spaces for disabled persons to ensure they have access to programs and facilities. As the DOJ stated, "enforcement of parking regulations is a matter governed by State or local law. The ADA does not contain provisions specifically requiring law enforcement officials to ensure that accessible parking spaces are occupied only by persons with disabilities." DOJ Opinion Letter from John L. Wodatch, Chief, Disability Rights Section to Mr. X, http://www.usdoj.gov/crt/foia/cltr168.txt (May 16, 1995). Connecticut has chosen to enforce the reserved parking program by utilizing special license plates and removable windshield placards. *See* Opinion Letter from Clarine Nardi Riddle, Attorney General to Eliot J. Dober, Office of Protection and Advocacy, Opinion No. 90–003, 1990 WL 596958 (Jan. 10, 1990) (discussing Connecticut's enforcement system).

There is one DOJ opinion letter addressing this exact issue. A Florida constituent wrote to his congressman about Florida's assess-

ment of a fee before issuing a permit which would be displayed in vehicles to indicate that the occupant has a disability and is entitled to use designated accessible parking spaces. The DOJ responded:

> Title II of the ADA requires State and local government entities to make their programs, including their public parking programs, accessible to individuals with disabilities. Therefore, if a State or local government provides parking at a facility, it must provide an appropriate number of accessible parking spaces for individuals with disabilities. In order to ensure that the accessible spaces are available when needed by individuals with disabilities, the spaces must be reserved for the exclusive use of such individuals. According to [the constituent's] letter, the State of Florida effects the reservation of accessible parking spaces by requiring users of such parking to display a particular permit.
>
> Title II of the ADA prohibits a public entity from imposing a surcharge on an individual with a disability for any measure that is necessary in order to ensure nondiscriminatory treatment required by the ADA. 28 C.F.R. § 35.130(f). **Because accessible parking is required by the ADA to be reserved for individuals with disabilities and because the issuance of permits is Florida's method of reserving the accessible spaces, Florida may be prohibited from charging a fee for such permits.**
>
> However, if Florida provides some alternate means, such as license plates with the international symbol of accessibility (ISA), to allow individuals with disabilities to use accessible spaces and if there is no surcharge for the alternate means, then Florida may charge for its special permits, as long as the coverage of the two means is equivalent (i.e., every individual with a disability has the choice and no one is required to use just one of the options).
>
> . . .
>
> **For ... individuals, for whom there is no surcharge-free option for obtaining access to required accessible parking spaces, the assessment of the extra fee appears to violate title II of the ADA.**

DOJ Opinion Letter from Deval L. Patrick, Assistant Attorney General, Civil Rights Division to Congressman C.W. Bill Young, http://www.usdoj.gov/crt/foia/tal689.txt (Apr. 29, 1996) (emphasis added).

Similarly, in *Dare* the court held that "California's enforcement system violates the ADA because individuals must pay a fee to use disability parking spaces that they are entitled to use under the ADA." Slip op. at 4. The court reasoned that:

> The State of California has chosen to limit access to reserved parking spaces to persons within the class protected by Congress who obtain the requisite form of visual display for their vehicle (either a disability license plate or placard). These visual displays make it easier for law enforcement officials to ascertain that individuals have a right to use the reserved spaces. The use of visual displays to restrict access to reserved parking does not violate the ADA *per se*. To the contrary, properly structured, such enforcement mechanisms advance the goals of the ADA by ensuring that the reserved spaces are actually available for those who need them.

*Id.*

■ Connecticut's method of enforcing the designated accessible parking system raises more additional concerns than Florida's or California's methods because in Connecticut disabled persons must pay a fee for either the placard or special license plates. Unlike Florida or California, there is no surcharge-free option in Connecticut.[8] We find that the special license plates and removable windshield placards are required measures under the ADA because Connecticut has chosen to enforce the designated parking system by using them as its method of restricting access to the parking spots reserved for disabled persons. As the court in *McGarry* found, the "problem ... is that the [placard parking] program conditions participation by

---

8. We note that some courts have rejected the argument that having a surcharge-free option insulates a state statute from challenge. *See*

*Thrope*, at 824; *McGarry*, 7 F.Supp.2d at 1027–28; *Dare*, No. 96–cv–5569, slip op. at 4–7.

some disabled people on the purchase of a parking placard." 7 F.Supp.2d at 1029.

■ Even if the parking placards are ADA-mandated measures, defendant asserts that the application fee is permissible under the Uniform System for Parking for Persons with Disabilities ("USPPD") which is set forth in the regulations at 23 C.F.R. pt. 1235 that were promulgated by the Department of Transportation pursuant to Public Law 100–641, 102 Stat. 3335 (Nov. 9, 1988) ("DOT regulations"). The DOT regulations expressly prohibit states from charging a fee for issuing special license plates, beyond the cost of issuing license plates in general. 23 C.F.R. § 1235.3(c). However, the DOT regulations do not specifically provide whether a state can charge a fee for issuing removable windshield placards. *See* 23 C.F.R. § 1235.4. According to defendant, there is inferential approval for imposing a fee for issuing placards. *But see McGarry,* 7 F.Supp.2d at 1027 ("Although the charging of parking placard fees is inferentially permitted under the USPPD, it is not required.").

While Public Law 100–641 and the USPPD as set forth in the DOT regulations address reserved disability parking, these provisions are merely guidelines for states to accept or reject as they choose. As one court stated, "Public Law 100–641 has no enforcement mechanism and is not codified in the United States Code. It 'encourages adoption of such system by all the States,' Pub.L. 100–641 § 3, but does not mandate compliance." *Id.* at 1026. We agree with the *McGarry* court and therefore we reject defendant's argument that the USPPD implicitly allows states to charge fees for removable windshield placards. Indeed, we note that Connecticut departed from the USPPD's ban on charging a fee for issuing special license plates by expressly requiring the DMV to charge $5.00 for applications. C.G.S.A. § 14–253a(b) (1996).

## CONCLUSION

In sum, we find that C.G.S.A. § 14–253a(b) (1996), which authorizes the DMV to charge a $5.00 fee to accept applications for removable windshield placards, violates section 12132 of the ADA because the $5.00 fee constitutes a discriminatory surcharge pursuant to 28 C.F.R. § 35.130(f) (1996). Consequently, we DENY defendant's summary judgment motion (doc. # 10) and GRANT plaintiff's cross-motion for summary judgment (doc. # 12).

**SO ORDERED.**