LOUISVILLE & NASHVILLE RAILROAD COMPANY et al. v. W. B. BATE et al.

1. **RAILROAD.** *Taxation. Board of Assessors. Certiorari.* If the Board of Railroad Assessors do not follow the provisions of the statute, their action is subject to the revisory jurisdiction of the courts, invoked by *certiorari.* Although the boards may be officers of the State, and proposing to discharge their duties as such, yet if they leap the prescribed limits of the law under which they act, it is the right of those about to be injured to ask for, and the duty of the courts to grant, restraining relief, and this may be done by petition for and writs of *certiorari* and *supersedeas.*

2. **SAME.** *Same. Same. Proof of value.* The statutes require that all proof be reduced to writing, sworn to and subscribed, etc. If the assessors base their estimates of value upon their personal knowledge formed from inspection and examination, which they may do, like all other testimony it should be reduced to writing, and an opportunity to cross-examine allowed the railroad.

3. **SAME.** *Same. Same. Main stem and branches.* The assessors should assess each railroad owned by a company separately. The fact that the company buys or leases a road in continuation, or rather an extension, of the original line, can make no difference. The main stem, roads bought or leased and branches should be separately assessed, and counties through which branches run are only entitled to the tax on the branches according to their respective values.

4. **SAME.** *Same. Same. Franchise, road-bed and superstructure.* The road-bed, franchise and superstructure of railroads are so essentially intermingled, and each so indispensable to the value of the others, that they should be assessed together.

5. SAME. *Same. Same. Distributable property.* The mandate of the statute requiring the assessors to assess the rolling-stock and other distributable property of the railroad company separately from the other property of the company implies an authority to value it together as a whole.

6. SAME. *Same. Same. Exemption.* A railroad company is entitled to an exemption of one thousand dollars from taxation, but the company is not entitled to an exemption upon each road purchased or leased, or upon its different branches. The owner of different railroads is no more entitled to double exemptions than is the owner of several farms.

### FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. FRANK T. REID, J.

ED. BAXTER, SMITH & ALLISON, J. M. DICKINSON, W. M. BAXTER, R. N. HOOD, D. H. POSTON and HOLMES CUMMINGS for Railroad.

J. J. VERTREES, A. S. MARKS and ATTORNEY-GENERAL LEA for Board of Assessors.

TURNEY, J., delivered the opinion of the court.

The proceedings originated under the act of March 20, 1875, and the amendments of March 20, 1877, and of April 26, 1882.

The assessors and examiners provided for by these acts undertook to assess the taxes due from the following railroad companies, viz: The Louisville & Nashville; East Tennessee, Virginia & Georgia; Rogersville & Jefferson; Knoxville & Augusta; Chesapeake, Ohio & Southwestern, and Memphis & Charleston. After the assessments had passed to the hands of the exam-

iners, and after two of them had affirmed the action of the board of assessors, and while the third was preparing a dissenting report, writs of *certiorari* and *supersedeas* were served upon them, and the matters transferred to the circuit court for Davidson county.

The substantial grounds laid in the petitions for the writs are, that section 4 of the act of 1877, as follows: "That all proof taken by said assessors shall be reduced to writing, and be sworn to and signed by the parties, and said assessors. shall make such rules and regulations as they may think proper as to notice and the time and mode of taking all proof, so as to afford the parties interested an opportunity to be present and cross-examine witnesses," has not been complied with. That the main stems, branches, leases, etc., were assessed separately. The franchise, road-bed and superstructure were assessed together, not showing what valuation was put upon either. The rolling-stock and other distributable property were assessed together, commingling the valuation so as to make them indistinguishable. The $1,000 exemption was taken from the main stem valuation, and nothing from the others. The main stems are valued at one estimate, and the branches, leases, etc., at other figures, and the tax value apportioned to the several counties and towns through which they run, on that basis.

Motions to dismiss the petitions were made, because the action of the board of examiners in the matter in the petition complained of is final and conclusive, and cannot be reversed or reviewed or revised, or in any manner interfered with or modified by this court

upon a *certiorari*, nor can said proceedings be removed into this court by a writ of *certiorari* for that purpose.

The several other causes involved in the solution of the one cited, which involves a construction of section 13 of the act of 1877, which provides: "That the action of the board of examiners provided for by the sixth section of the act of March 20, 1875, shall be final and conclusive as to the value of a railroad.

By the Code, section 3123: "The writ of *certiorari* may be granted whenever authorized by law, and also in all cases where an inferior tribunal board or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when in the judgment of the court there is no other plain, speedy or adequate remedy." This statute is enabling to section 10 of Article 6 of the State Constitution as follows: "The judges or justices of inferior courts of law and equity shall have power in civil cases to issue writs of *certiorari* to remove any cause, or the transcript of the record thereof from any inferior jurisdiction into such court of law on sufficient cause, supported by oath or affirmation.

In *Wade* v. *Murray*, 2 Sneed, 56, Judge McKinney delivering the opinion of a majority of the court says: "In a case involving a question as to the legal competency of the judge or showing such a substantial departure from the course of proceeding prescribed in the statute as would render the proceedings void the *certiorari* would be the proper remedy." I am

of opinion with Judge Totten that the revisory juris-
diction extends to any question of error or illegality
in the proceedings which has the effect to prejudice
the rights of a party. I also think the Legislature
has no power to say that any citizen shall be de-
prived of the right to have all questions touching his
life, liberty or property heard, passed upon, and de
termined by the regular and constitutional courts of
the State, such right is inalienable. It is unnecessary
in the present case to go beyond the majority opinion
in *Wade* v. *Murray*.

The allegations of the petitions, in direct terms, charge
a departure from the proceeding prescribed in the stat-
ute. The petitions are based upon a purpose to have
the statute pursued and to prevent its violation. The
motions must be treated as a demurrer, and the alle-
gations of the petitions be treated as true, for the
purposes of the motion. The petitioners are not at-
tempting to defeat the will of the State, but to en-
force that will as the petitioners understand it from
a reading of the statutes. This necessarily presents
the issue of a proper construction of the language of
the statutes from which to derive the meaning of the
Legislature. However honest the interpretation of the
boards of assessors and examiners may have been, still
the parties to be affected thereby have the right to
insist upon a different interpretation, and ask the
opinion of the courts.

Although the boards may be officers of the State,
and proposing to discharge their duties as such, yet
if they overleap the prescribed limits of the law under

which they act, it is the right of those about to be injured to ask for, and the duty of courts to grant a restraining relief, we think the petitions make *prima facie* cases for relief.

What are the facts? Did the boards exceed their authority? `as we have seen, the act requires all the proof to be reduced to writing, sworn to and subscribed, etc., and upon this proof the boards to act in fixing their valuations for taxation. An examination of the record shows the values fixed by the board in excess of that shown by the proof. We cannot supply this defect by presuming the officers did their whole duty, we presume they have, as they are required to do, returned to the proper deposits all the proofs upon which they acted. The statute confers extraordinary power and is in derogation of common right and must be strictly construed and observed, when called upon as here the boards must show they have kept to the statute. This is not done in the matter of proof in in most of the cases before. Nor does it appear that the parties had notice of the taking of the depositions, or some of them at least, which appear in the record. It may be the assessors based their estimates of value upon their personal knowledge, formed from inspection and examination. This they might have done, but like all other testimony it should have been reduced to writing, and an opportunity to cross-examine allowed to the parties in interest.

What we have said in construction of the fourth section of act of 1877 does not apply to the Memphis & Charleston road, its leases, branches, etc., as

its exceptions do not raise the question, and as to all the system of the Louisville & Nashville roads, except the main stem from the Kentucky line via Gallatin to Nashville, and the Nashville & Decatur division extending from Nashville to Decatur, Alabama, while the Memphis & Charleston road does make the question in its petition, it was not made by exception to the assessments, and we cannot hold the assessors have erred upon a question not submitted to them, especially when the exceptions substantially waive it.

The judgment is reversed as to the Memphis & Charleston road, and affirmed as to the others except as indicated as to Louisville & Nashville road.

The objection as to the mode of valuing main stems, branches, leases, etc., we do not think is well taken. The language of the first section of the act of 1875, "that each railroad company owning and operating a railroad" does not, we think, authorize the conclusion that the Legislature meant that each road, branch and lease owned and operated by a single company should constitute but one road. A railroad company owning one road may purchase or lease other roads, and still as to each it must be governed by the same rules as were the original owners. It simply takes the place of the original owner or lessor, and stands upon no better ground. The fact that the road bought or leased is a continuation, or rather an extension of the original line, can make no difference. For instance: The Nashville & Chattanooga Railroad was chartered to one company, and the Nashville &

Northwestern to another, both roads are now owned by one company, and make one direct line from Hickman in Kentucky to Chattanooga in Tennessee, yet as they originated under separate charters they must be treated for taxing purposes as separate roads. They are entitled to the advantages, and must submit to the burdens of the addition. Were a different rule to obtain, one company might become the owner of all the roads traversing the State, or might go north or south, east or west, out of the State in the purchase of main and extensive lines, with their branches and leases, and thereby and on account of the unprofitableness of the additions, so reduce the value of the Tennessee roads as to make the most valuable, best built, best paying and best equipped roads pay a comparatively very small tax. A branch is only valuable and taxable to the extent of its contribution to the main line. The main line is *the road*, a branch is a mere feeder to it.

In many instances narrow gauge roads, operated with light and cheap engines, and small and inexpensive cars, are made for branches—they are usually short, carry comparatively but little freight and fewer passengers. In other instances branches of the same gauge of the main roads are operated with engines and cars unfit for the heavy business of the main line. The tracks are of old and worn-out iron rails, as appears in this record, and upon cross-ties rejected by the main line, and their rate of speed, because of such defects, does not, nor is it necessary that it should at all come up to that of the line it is intended to

Railroad v. Bate.

assist in a very small way at occasional favorable seasons. These little lines have plenty of time, and to spare, to do all their work, while the parent line is always in a hurry with no hour for rest. Therefore the mode of valuation adopted by the assessors is the proper one, and the tax values should be apportioned to the several counties and towns through which they respectively run, on the basis indicated by this opinion.

The next objection, that the road-bed, franchise and superstructure were assessed together, is, we also think, not well taken. These three components are so essentially intermingled, and each so indispensable to the value of the others, that we do not see how they can be separately estimated, one without the other two would be utterly valueless for railroad purposes. It takes all these to make a road that can be owned and operated, and no other road is taxable. The franchise is the right to use the bed and superstructure, its value depends solely upon their use and the profit derived therefrom.

It is next objected, the rolling-stock and other distributable property was assessed together.

The statute, section 3, act 1882, is, "That the road-bed, rolling-stock, franchise, choses in action and personal property having no actual *situs*, shall be known as its distributable property, and shall be valued by said assessors separate from the other property of the company, and after having ascertained the total value of such distributable property wheresoever situated, whether within or without the State, and having deducted from its value one thousand dollars they shall

divide," etc.   The mandate of the statute that the property defined shall be valued separately from other property of the company, implies an authority to value it together as a whole, while it is the duty of the assessors to employ such means as will most nearly reach the exact value of the property, we can see that it is next to, if not quite, impossible to itemize every article, great and small, that may go to make up the aggregate.   The companies have not themselves used the extreme particularity in their schedules this objection suggests as the duty of assessors.

The argument that the valuations are so commingled as to make them indistinguishable is one of inconvenience and applies with greater force against than for railroad companies.   When they see the estimate upon the property as it has been classed by the Legislature, they are advised at once of what it is constituted; they know the value of each article composing the aggregate, and just where to put their hands upon the proof of that value; with this knowledge it is comparatively an easy undertaking to specify in detail, and then point out any error in the summing up.   The facts making up the value lie peculiarly within their knowledge, are in their keeping, and they cannot be heard to say in general terms the valuation is too high or too comprehensive, but must particularize.   The objection fails.

The objection that the $1,000 exemption is only taken from the main stem valuation, and none from the others, must be disallowed.   The general law is, that only that much is exempt without regard

to the wealth of the tax-payer or the diversity of property owned by him. The owner of different railroads is no more entitled to double exemption than is the owner of several farms, several stock lots, several tanneries, several hotels, or several store-houses. It is as much forbidden by the Constitution in the one case as in the others.

The county of Knox and the city of Knoxville are not parties to the proceedings, and the questions they attempt to make touching the taxation of property within their limits cannot be considered.