**STEWART TITLE GUARANTY COMPANY, a Texas Corporation, Plaintiff/Appellant,**

v.

**Elaine A. McREYNOLDS, Commissioner of Commerce and Insurance, State of Tennessee, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section at Nashville.

May 27, 1994.

Permission to Appeal Denied by Supreme Court Oct. 3, 1994.

Lewis R. Donelson, John R. Gregory, Sheila Jordan Cunningham, Heiskell, Donelson, Bearman, Adams, Williams & Caldwell, Memphis, for plaintiff/appellant.

Charles W. Burson, Atty. Gen. & Reporter, Joe C. Peel, Asst. Atty. Gen., Nashville, for defendant/appellee.

## OPINION

CANTRELL, Judge.

Stewart Title Guaranty Company filed an action in the Chancery Court of Davidson County seeking a refund of risk rate and retaliatory taxes assessed by the Tennessee Department of Commerce and Insurance. The chancellor dismissed the claim, holding that jurisdiction for tax refunds was given to the Tennessee Claims Commission. Stewart Title asserts on appeal that the statutes do not give jurisdiction of this claim to the commission, or if they attempt to do so the attempt fails because our state's constitution reserves jurisdiction to review tax assessments to constitutionally created courts. We affirm the chancellor's decision.

## I.

Stewart Title is a Texas corporation selling real estate title insurance in Tennessee. Its operations are subject to the supervision and control of the commissioner of commerce and insurance. Tenn.Code Ann. § 56–35–105. The title insurance law subjects foreign title insurance companies to two different taxes: (1) the usual tax paid by title insurance companies on all risk rate charges collected, Tenn.Code Ann. § 56–35–107; and (2) a tax, called the retaliatory tax, designed to make foreign companies pay the same amount in Tennessee that Tennessee companies pay in the state of the foreign company's origin. Tenn.Code Ann. § 56–35–128. The taxes are administered and collected by the commissioner of commerce and insurance.

In 1991, the commissioner notified Stewart Title that additional risk rate and retaliatory taxes were due for the tax years 1987, 1988, 1989, and 1990. Stewart Title paid the taxes, penalties, and interest under protest and filed this action in the chancery court. The chancellor granted the commissioner's motion attacking the court's subject matter jurisdiction.

## II.

The commissioner's position, which was adopted by the chancellor, is that the sole and exclusive jurisdiction for the recovery of insurance taxes is vested in the Tennessee Claims Commission. An examination of the relevant statutes is required to determine if that position is correct.

In 1984, the legislature created the claims commission and gave it exclusive jurisdiction to "determine all monetary claims against the state falling within one (1) or more of the following categories: ... (14) claims for the

recovery of taxes." Public Acts of 1984, chapter 972, section 8(a)(14).

With respect to claims for taxes, the claims commission act has been amended twice since 1984. In chapter 105 of the Public Acts of 1985, the legislature specifically provided that claims for employment security taxes paid under protest were to be pursued through the claims commission. The second amendment pertaining to tax refunds came in 1986 when the legislature removed taxes collected by the commissioner of revenue from the claims commission's jurisdiction. In its present form the claims commission act gives the claims commission exclusive jurisdiction over

> (O) Claims for the recovery of taxes collected or administered by the state, except any tax collected or administered by the commissioner of revenue.

Tenn.Code Ann. § 9–8–307(a)(1)(O).

### III.

■ The statute's words seem plain and clear. Even Stewart Title concedes that the words convey the meaning that jurisdiction for the recovery of all taxes except those collected and administered by the commissioner of revenue is vested in the claims commission. Stewart Title, however, advances three arguments why the legislature did not intend to place insurance taxes under this sweeping provision.

The first argument relates to the fact that the caption of the 1984 claims commission act did not refer to Tenn.Code Ann. § 56–4–219 which previously governed refunds of taxes collected by the Department of Commerce and Insurance. Second, Stewart Title argues that the study committee report which led to the creation of the claims commission did not contain any evidence that title 56 of the code was to be changed. And finally, Stewart Title argues that the 1985 act placing employment security taxes under the claims commission would have been unnecessary if the claims commission statute had indeed included *all* state taxes. From this evidence, Stewart Title concludes that initially, the legislature only intended to transfer claims for department of revenue taxes to the jurisdiction of the claims commission; and, since no

subsequent legislation transfers insurance taxes to the claims commission, the former procedure for insurance taxes is still in effect.

As thorough as Stewart Title's analysis of the problem is, however, we think it cannot overcome the plain words of the statute itself. The 1984 act placed jurisdiction for the recovery of taxes in the claims commission without qualification. The subsequent amendments do not cast any doubt on the sweeping language used in the 1984 statute.

■ The most fundamental rule of statutory construction "is to ascertain and give effect to the intention or purpose of the legislature as expressed in the statute." *Crown Enterprises v. Woods,* 557 S.W.2d 491 at 493 (Tenn.1977). If the statutory language is clear and plain and fully expresses legislative intent, there is no reason to resort to rules of construction. *Anderson v. Outland,* 210 Tenn. 526, 360 S.W.2d 44 (1962). It seems clear to us that the legislature originally intended to give jurisdiction over *all* state tax refunds to the claims commission. Then, in 1986, the statute was amended to exclude jurisdiction over taxes collected or administered by the commissioner of revenue. That leaves all other state-collected taxes within the commission's jurisdiction.

In addition, there is other evidence that in 1984 the legislature intended to give jurisdiction of all state tax refunds to the claims commission. Section 19(c) of the claims commission act provided that "Tennessee Code Annotated, Section 67–1–903 through 908 shall no longer apply to state taxes." These are the sections that Stewart Title invoked in its complaint in the chancery court and are the sections governing the procedure for obtaining tax refunds prior to 1984. They are the sections that Stewart Title would proceed under if its position were sustained. We think the above-quoted categorical statement in the claims commission act is further evidence that the legislature was conscious of the sweeping changes the legislation was meant to bring produce.

In *Jack Daniels Distillery v. Olsen,* 716 S.W.2d 496 (Tenn.1986), this same issue was noted by the court. In that case the chancel-

lor dismissed a small portion of the claimed refund because it involved taxes paid after January 1, 1985 and jurisdiction for that refund had passed to the claims commission. The Supreme Court affirmed that part of the judgment without comment. Since the taxes involved were not taxes collected by the insurance commissioner the case is not directly on point, but we think it is still more evidence of how the courts in 1986 viewed the recently passed legislation.

Finally, although we think the plain language of the statute renders unnecessary any resort to legislative history, we do not believe the study committee report indicates an intention to limit the jurisdiction of the claims commission to only those taxes that are collected by the commissioner or revenue. At the beginning of the report, the committee stated its conclusions. Conclusion 5 reads as follows:

> 5. The committee concludes that if an independent body is created to adjudicate tort and workers' compensation claims against the state, then that body should also be granted jurisdiction to decide all claims against the state including contract and tax claims. In doing so, this body could develop the expertise necessary to adjudicate fairly, consistently, and efficiently all claims against the state and thereby ensure the equitable treatment of all persons having such claims.

Then, in a series of recommendations, the committee included the following:

> 3. The committee recommends that, if immunity is waived, the state create an independent Tennessee Claims Commission to adjudicate claims against the state. The Commission should be given jurisdiction to adjudicate claims relating to tort, contract, tax, and worker's compensation.

We conclude that if the committee had intended to limit the tax claims adjudicated by the claims commission it would have said so at least once in its lengthy report.

## IV.

Stewart Title also asserts that Tenn. Code Ann. § 56–4–219, a part of the law governing insurance fees and taxes, requires a suit in chancery court to recover taxes paid under protest. That section provides:

> (a) With respect to any revenues or receipts collected by the department of commerce and insurance, other provisions of the law to the contrary notwithstanding, such amounts as are determined to have been erroneously paid may be refunded by such procedure as developed by the commissioner of finance and administration and approved by the comptroller of the treasury.

> (b) Such procedure shall provide that no refund shall be made unless within three (3) years from December 31 of the year in which the erroneous payment was made, such refund is either requested by the claimant or made by the state on its own motion. A refund of taxes which is based solely on a final court adjudication shall not be made to any person who is not either a party to such action or a party to another similar action brought pursuant to title 67, chapter 1, part 9. The decision of the appropriate state official with respect to any refund request shall be final and not subject to review in accordance with title 4, chapter 5.

This section was passed as chapter 633 of the Public Acts of 1984. The claims commission act was contained in chapter 972 of the same public acts. To the extent that they conflict the latter act would control. *Steinhouse v. Neal,* 723 S.W.2d 625 (Tenn. 1987); *Bailey v. Drane,* 96 Tenn. 16, 33 S.W. 573 (1896). Being passed at the same session of the legislature, however, the act should, if possible, be construed so to harmonize and give effect to the provisions of each. *Hill v. Roberts,* 142 Tenn. 215, 217 S.W. 826 (1919).

We do not think the two acts conflict. Tenn.Code Ann. § 56–4–219 allows the commissioner of insurance and banking to establish a procedure for refunding taxes erroneously paid. Subsection (b) limits the class that may be eligible for an administrative refund *when the right to a refund is established by a court decision.* The class is defined as those who are parties to the action or parties to another similar action "brought pursuant to title 67, chapter 1, part 9."

Admittedly, if we are correct in our decision that since January 1, 1984 all insurance tax refunds must be sought through the claims commission, there should be no actions brought pursuant to title 67, chapter 1, part 9. But we think that the apparent anomaly results from the fact that § 56–4–219 was passed before the claims commission act and was the procedure in effect for the recovery of taxes at that time.

We think the purpose of the legislation was to guard against a deluge of refund claims where a court decision causes a fundamental change in the application of the tax laws. When such change occurs, the class benefitting from the change would be narrowed by the application of Tenn.Code Ann. § 56–4–219. But, the statute does not eliminate all administrative refunds of taxes erroneously paid. It only means that there will be no administrative refunds based solely on a precedent established in an action to which the claimant was not a party.

## V.

Stewart Title also attacks the claims commission act on constitutional grounds. These contentions may be summarized as follows:

(A) The act violates article 2, section 17 of the constitution because the scope of the act could not be discovered from the caption or from the body of the act;

(B) The act violates article 1, section 8 of the constitution by depriving taxpayers of a review of tax collections by constitutionally elected courts;

(C) The act violates the separation of powers provisions of the constitution, article 1, sections 1 and 2, by giving the claims commission concurrent jurisdiction with the chancery court; and

(D) The act violates article 6, section 2 of the constitution which provides that the supreme court's jurisdiction shall be appellate only, by giving the supreme court original jurisdiction.

## A.

■ The first contention does not require an extensive discussion. Assuming that the claims commission act was broader than its caption or that its effect on other laws could not be discovered from its body, we think that the subsequent reenactment of the code cured the constitutional objections based on article 1, section 17 of the Tennessee constitution. When an amendatory act is subsequently codified all questions relating to the act being broader than the caption become irrelevant. *McClellan v. State*, 199 Tenn. 60, 282 S.W.2d 631 (1955); *Nichols v. Tullahoma Open Door, Inc.*, 640 S.W.2d 13 (Tenn.App. 1982). The Public Acts of 1984 were codified by chapter 2, Public Acts of 1985.

## B.

■ As to the due process argument, all would concede that Stewart Title is entitled to due process under article 1, section 8 of the Tennessee constitution. *Anglin v. Mitchell*, 596 S.W.2d 779 (Tenn.1980). The fundamental requirement of due process is notice and the opportunity to be heard before a competent tribunal. Stewart Title cites *L & N Railroad Co. v. Bate*, 80 Tenn. 573 (1883) for the proposition that the claims commission, an administrative agency, is not a competent tribunal to hear and determine tax refund cases. According to the argument, only a constitutionally elected court would satisfy the due process requirement.

We do not think *L & N Railroad v. Bate* supports Stewart Title's argument. That case upheld the power of the courts to review the action of the board of railroad assessors by the common law writ of certiorari. In its opinion the court referred to article 6, section 10 of the Tennessee constitution which preserves the power of the courts to review the actions of inferior jurisdictions. Where the court described the "unalienable" citizens' right to have questions touching his or her life, liberty, or property decided by the constitutional courts, it was in the context of a suit to review the essential legality of the proceedings before an inferior tribunal. *See Brown v. Tennessee Real Estate Comm.*, 494 S.W.2d 506 (Tenn.App.1972). The court did not say that the petitioner had the right to a trial of the assessments in the courts.

We are satisfied that a trial in the claims commission and a review of that decision in

the courts satisfies Stewart Title's right to due process.

### C.

■ Article 2, section 1 of the Tennessee constitution provides that the governmental powers are to be divided between the legislative, the executive and the judicial branches. Article 2, section 2 prohibits one of the branches of government from exercising the powers reserved to one of the other branches.

The claims commission act allows the commission to transfer cases to the chancery court under certain circumstances. Tenn. Code Ann. § 9-8-404(a) and (b). Stewart Title argues that this provision violates a separation of powers requirement in the constitution because it gives the claims commission concurrent jurisdiction with the circuit or chancery courts.

In the case of *Town of South Carthage v. Barrett*, 840 S.W.2d 895 (Tenn.1992), the Supreme Court found such a violation where the corporation court of South Carthage was given concurrent jurisdiction with the general sessions courts to enforce certain state criminal laws. The court recognized that it was proper for the legislature to give such jurisdiction to inferior courts but if it did so the judges of those courts must be elected according to article 6, section 4 of the constitution.

We think, however, that actions for tax refunds are fundamentally different from state criminal prosecutions. Tax refund actions are "suits against the state", *Griffith Motors, Inc. v. King*, 641 S.W.2d 200 (Tenn. 1982), and can be brought only as the legislature directs. Article 1, section 17, Tennessee constitution; *Jack Daniels Distillery v. Olsen*, 716 S.W.2d 496 (Tenn.App.1986). Thus, we think it is proper for the legislature to give the power to adjudicate such claims to an administrative agency—so long as the taxpayers' rights to a fair hearing and a meaningful review are preserved.

### D.

■ Finally, Stewart Title argues that the claims commission act gives original jurisdic-

tion to the Supreme Court in violation of article 6, section 2 of the Tennessee constitution. The offending section of the act is Tenn.Code Ann. § 9-8-403(a)(1) which says that appeals from the claims commission in tax matters shall go directly to the Supreme Court. Stewart Title argues that since no regular court has passed on the issues, the Supreme Court will be exercising original jurisdiction.

This contention appears to have some merit based on the Supreme Court's decision in *In Re Cumberland Power Co.*, 147 Tenn. 504, 249 S.W. 818 (1923). In that case the Supreme Court held that the Supreme Court could not review directly an appeal from the railroad and public utilities commission. The appellate jurisdiction of the court could only be exercised in reviewing the actions of a *court.*

We think, however, that this is a moot issue since appeals involving state taxes are now governed by Tenn.Code Ann. § 16-4-108(a)(1)(Supp.1993). All appeals in civil cases except worker's compensation and appeals pursuant to Tenn.Code Ann. § 37-10-304(2) now go to the Court of Appeals.

Prior to 1992 the Supreme Court exercised direct appellate jurisdiction over appeals involving "state revenue." Hence, the provision in Tenn.Code Ann. § 9-8-403(a)(1) providing that appeals in tax cases go directly to the Supreme Court. But the Appellate Court Improvement Act of 1992, ch. 952, Tenn.Pub.Acts 1992, transferred appellate jurisdiction over all civil appeals—except for the two classes noted above—to the Court of Appeals.

Although the legislature did not repeal Tenn.Code Ann. § 9-8-403(a)(1), we think that section has been repealed by implication. While repeals by implication are not favored, *Jenkins v. Loudon County*, 736 S.W.2d 603 (Tenn.1987), where two statutes covering the same subject matter are irrevocably inconsistent, the courts hold that the later act repeals or amends the earlier. *Dep't of Revenue v. Moore*, 722 S.W.2d 367 (Tenn.1986); *English v. Farrar*, 206 Tenn. 188, 332 S.W.2d 215 (1960). Since the legislature amended the statute governing the jurisdiction of the Court of Appeals in 1992, we hold that Tenn.

Code Ann. § 9–8–403(a)(1), passed in 1984, has been repealed by implication.

Our decision on this point is strengthened by another part of the 1992 Act, the so-called "reach down" provision, *see* Tenn.Code Ann. § 16–3–201(d)(1). That part of the Act gave the Supreme Court the power to assume jurisdiction over an undecided case filed in one of the intermediate appellate courts if the case is one of unusual public importance and involves *state taxes,* the right to hold or retain public office, or constitutional questions. If the Supreme Court still had exclusive jurisdiction over state revenue cases this part of the 1992 act would have no meaning at all.

We realize that Tenn.Code Ann. § 16–4–108(a)(1)(Supp.1993) also provides that the jurisdiction of the Court of Appeals shall be appellate only. So, if *In Re Cumberland Power Co.,* is still good law, an argument could be made that in giving the Court of Appeals jurisdiction over appeals from the claims commission, the legislature has violated that provision. But, unlike the Supreme Court, the Court of Appeals is a creature of the legislature and its jurisdiction may be adjusted as the legislature sees fit. *Hodge v. State,* 135 Tenn. 525, 188 S.W. 203 (1916). Under the same principles we previously discussed, to the extent that the legislature has given this court jurisdiction that is inconsistent with the "appellate only" provision of Tenn.Code Ann. 16–4–108(a)(1)(Supp.1993), the earlier provision has been repealed pro tanto.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings that may become necessary. Tax the costs on appeal to the appellant.

LEWIS and KOCH, JJ., concur.