*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0197P (6th Cir.)
File Name: 00a0197p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ANDREW HEDGEPETH, CELIA
BURSON, DAVID MCCLEARY,
and GAYNELL METTS, on
behalf of themselves and all
others similarly situated,
　　　　*Plaintiffs-Appellants,*

　　　　　　*v.*

STATE OF TENNESSEE, STATE
OF TENNESSEE DEPARTMENT
OF SAFETY, and MIKE GREEN,
in his official capacity as
Commissioner of the State of
Tennessee Department of
Safety,
　　　　*Defendants-Appellees.*

No. 99-5166

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-02825—Jerome Turner, District Judge.

Argued: March 14, 2000

Decided and Filed: June 12, 2000

Before:  RYAN, MOORE, and FARRIS,[*] Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Michael F. Rafferty, HARRIS, SHELTON, DUNLAP & COBB, Memphis, Tennessee, for Appellants. Mary M. Collier, OFFICE OF THE ATTORNEY GENERAL, CIVIL LITIGATION & STATE SERVICES DIVISION, Nashville, Tennessee, for Appellees. **ON BRIEF:**  Michael F. Rafferty, HARRIS, SHELTON, DUNLAP & COBB, Memphis, Tennessee, Alex Saharovich, NAHON & SAHAROVICH, Memphis, Tennessee, for Appellants. Mary M. Collier, OFFICE OF THE ATTORNEY GENERAL, CIVIL LITIGATION & STATE SERVICES DIVISION, Nashville, Tennessee, for Appellees.

FARRIS, J., delivered the opinion of the court, in which RYAN, J., joined.  MOORE, J. (pp. 15-19), delivered a separate dissenting opinion.

_____

**OPINION**
_____

FARRIS, Circuit Judge.

**BACKGROUND**

Andrew Hedgepeth, Celia Burson, David McCleary, and Gaynell Metts are disabled individuals who brought this action on September 12, 1997, under the federal Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.,* against the State of Tennessee, the State of Tennessee Department of

Because the essential character of Tennessee's assessment for disabled parking placards is regulatory, I would hold the Tax Injunction Act inapplicable to the plaintiffs' suit.

_____

[*] The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Tennessee's assessment for disabled parking placards therefore has all the characteristics of a regulatory fee. First, although Tennessee's assessment was imposed by the Tennessee legislature, the responsibility for administering and collecting the assessment lies with a regulatory agency, the Department of Safety. Second, the assessment is imposed on only a narrow class of persons. Finally, as I have explained, the assessment is connected to the cost of the program, thus suggesting a regulatory purpose.

At bottom, Tennessee's assessment is analogous to a license or permit fee, which is a paradigmatic regulatory fee. *See National Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 340-41 (1974) ("Taxation is a legislative function . . . . A fee, however, is incident to a voluntary act, *e.g.*, a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society."). As with a permit fee, Tennessee's assessment is voluntary and is charged for the privilege of obtaining a benefit. While the State may generate some additional revenue from the program, the program confers a benefit on the disabled passenger different from that enjoyed by the general public. *Cf. United States v. River Coal Co.*, 748 F.2d 1103, 1106 (6th Cir. 1984) (holding that mining reclamation fees were taxes, and so nondischargeable in bankruptcy, by distinguishing reclamation fees from permit fees: "[The reclamation fee] is imposed as an additional charge on operators who have already received permits. Unlike the permit fee, the reclamation fee does not confer a benefit on the operator different from that enjoyed by the general public when environmental conditions are improved. On the contrary, it is an involuntary exaction for a public purpose . . . .").

Safety, and Mike Green, the Commissioner of the Tennessee Department of Safety.

The State of Tennessee charges a sum for the issuance and renewal of disabled parking placards pursuant to the Disabled Drivers Law of 1975, Tenn. Code Ann. § 55-21-101, *et seq.* The placards allow disabled persons equal access to public and private facilities by making available various parking accommodations. The State of Tennessee Department of Safety charges disabled persons (or those who provide transportation services for them) a fee of $20.50 for vehicle registration and for a placard that is valid for two years, and $3.00 for replacement or renewal of the placard every two years thereafter. Plaintiffs contend that the State's fees are surcharges that discriminate against individuals with disabilities in violation of the ADA. The force of Plaintiffs' contention is that a public entity may not permissibly charge the disabled for measures taken to provide the nondiscriminatory treatment required by the Act. *See* 42 U.S.C. § 12132; 28 C.F.R. § 35.130(f). The complaint seeks damages under the ADA, as well as declaratory and injunctive relief.

The State moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) arguing that: (1) the district court did not have subject matter jurisdiction because the State's charges were "taxes" for purposes of the Tax Injunction Act; (2) the court lacked jurisdiction because the State is immune from such a lawsuit under the Eleventh Amendment; and (3) Plaintiffs' claims were barred by the statute of limitations.

The district court dismissed Plaintiffs' complaint on December 28, 1998. It determined that the State's assessment for the disabled parking placards was a tax for purposes of the Tax Injunction Act and that Plaintiffs had a "plain, speedy, and efficient remedy" to contest the matter at the state level. Alternatively, the district court held for purposes of appellate review that the complaint should also be dismissed on

grounds of Eleventh Amendment immunity[1] and the statute of limitations.[2]

## DISCUSSION

### I. Whether the Federal Courts Lack Jurisdiction Over Plaintiffs' Complaint Pursuant to the Tax Injunction Act.

#### A. *Standard of Review*

We review de novo a district court's order dismissing a complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction. *See id.* The district court's factual findings made in resolving a motion to dismiss are reviewed for clear error while its application of the law to the facts is reviewed de novo. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996).

#### B. *The Tax Injunction Act*

The district court's jurisdiction turns on the application of the Tax Injunction Act, which provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The purposes of the Act are "to

---

[1] Although the district court dismissed the action under Fed. R. Civ. P. 12(b)(1), the court addressed the State's contention regarding Eleventh Amendment immunity for purposes of appellate review. However, we hold this issue in abeyance pending the disposition of three other cases, and thus decline to discuss Eleventh Amendment immunity here.

[2] In light of our determination regarding the Tax Injunction Act, we do not reach the issue of the applicable statute of limitations for claims brought under Title II of the ADA.

became law provided for a renewal charge of $3 bi-annually, rather than $5. J.A. at 57 (Irwin Dep.).

The plaintiffs argue that this form shows a correlation between the cost of the renewal program and the revenue generated therefrom. A $5 assessment would have generated $500,000 in revenue bi-annually and resulted in a large revenue surplus. However, the plaintiffs explain that the $3 renewal charge that was eventually enacted into law generates only $300,000 in revenue, essentially "cover[ing] the Division's cost of administering the program." Appellant's Br. at 16. While the correlation is not exact, the fiscal note support form does reveal a relationship between the assessment and the cost of the renewal program.[2] In conjunction with the earlier version of the statute the form suggests that the ultimate purpose of the assessment is to defray the costs of administering the disabled parking placard program.[3]

---

[2] We are unfortunately presented with little information regarding the cost of the initial placard issuance program. The State contends that the actual cost of the placard is 45.4 cents. J.A. at 54 (Irwin Dep.). Because the $20.50 assessment significantly exceeds the actual cost of the placard, the State argues that the assessment is best seen as a general revenue raising measure. The majority agrees, stating that "[t]he only evidence in the record regarding any costs associated with the State's disabled parking program is the actual cost of the disabled parking placard." *Ante*, at p. 10. However, the actual cost of the placard is not the only cost associated with the regulatory program, as is evidenced by the fiscal note support form.

[3] The majority believes that the fiscal note support form does not support an inference that the monies collected from the renewal program help to defray the program's cost, explaining that we do not know the reasons why the Tennessee legislature decided to reduce the amount of the assessment from $5 to $3. The legislature's rationale for reducing the amount of the assessment is, however, immaterial. The important fact is that, as enacted, the amount of revenue collected from the program roughly parallels the cost of the program's administration, which is suggestive of a regulatory purpose.

In the instant case, there is a connection between the assessment and the costs of the regulatory scheme. First, the evolution of the statutory provision at issue shows that the charge for parking placards is connected to cost. The current language reads: "If the applicant is eligible for a disabled license plate, the placard shall be furnished without charge. If the applicant has not applied for vehicle registration, then the cost of the placard shall be the same as the regular fee for passenger motor vehicles, as provided in § 55-4-111." TENN. CODE ANN. § 55-21-103 (1998). However, as first enacted, the Disabled Drivers Law of 1975 did not specify an amount to be charged for placards, but provided that "[t]he actual cost of the placard shall be paid by the handicapped driver." TENN. CODE ANN. § 55-21-103 (1980 Replacement). The fact that the early version of the provision tied the assessment to cost suggests that the purpose of the assessment is regulatory.[1]

Additionally, the plaintiffs point to a fiscal note support form that was prepared by the Division of Title and Registration to comment on the fiscal effect of Senate Bill No. 1831. The bill proposed that the Disabled Drivers Law be amended to provide for the renewal of permanent placards every two years for a fee of $5. J.A. at 56-57 (Irwin Dep.); 85 (Fiscal Note Support Form). The Division of Title and Registration estimated the fiscal impact of the bill to be $204,100 bi-annually. J.A. at 86 (Fiscal Note Support Form). With a charge of $5 per placard, it was estimated that the bill would generate $500,000 in revenue during that same time period. J.A. at 86 (Fiscal Note Support Form). The bill that

---

[1]The majority disagrees with this reasoning; it states that, because disabled passengers must pay the same amount for a placard that all persons must pay to register their vehicles, "[d]isabled persons are merely being taxed in the same way that non-disabled persons are being taxed." *Ante*, at p. 10 n.5. The majority's conclusion rests on the premise that the "regular fee for passenger motor vehicles," TENN. CODE ANN. § 55-21-103 (1998), is a tax within the meaning of the Tax Injunction Act, which is not at all clear.

promote comity and to afford states the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising." *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987).

To date, there are two federal circuit courts that have addressed the precise issue of whether assessments imposed for disabled parking placards constitute taxes or fees under the TIA.[3] *See Hexom v. Oregon Dep't of Transp.*, 177 F.3d 1134 (9th Cir. 1999); *Marcus v. Kansas, Dep't of Revenue*, 170 F.3d 1305 (10th Cir. 1999). The Ninth Circuit in *Hexom* held that the $4.00 fee was not designed to raise revenue. *See Hexom*, 177 F.3d at 1139. Rather, the fee was designed to pay for the costs of a special program, and thus was not a tax for purposes of the TIA and did not preclude federal court jurisdiction. *See id.* The Tenth Circuit also concluded that the $5.25 assessment was not a tax because it was "expressly tied to the administrative costs of a specific regulatory scheme and, therefore, its essential character [was] regulatory." *Marcus*, 170 F.3d at 1312.

---

[3]At least three district courts have also confronted the issue. While the courts are split in their determination, it appears that one of the guiding factors is the cost of the assessment, and whether the cost is nominal or exacts a greater amount for general revenue raising purposes. *See Thrope v. Ohio*, 19 F. Supp. 2d 816, 823 (S.D. Ohio 1998) ("the [$5.00] placard surcharge is not a 'tax' for purposes of the Tax Injunction Act, because it is charged only to the applicants for a placard and designed to cover the regulatory costs of administering the program"); *Lussier v. Florida, Dep't of Highway Safety & Motor Vehicles*, 972 F. Supp. 1412, 1420-21 (M.D. Fla. 1997) (finding that $13.50 of the $15.00 disabled person parking permit fee was not used to defray administration expense and was, therefore, a tax within the meaning of the TIA); *Rendon v. Florida*, 930 F. Supp. 601, 604-05 (S.D. Fla. 1996) (finding disabled parking permit fee to be a tax where the $15.00 surcharge was not assessed for regulatory reason and bore no relationship to cost of regulatory program).

### 1.    *Whether Tennessee's Assessment is a Fee or a Tax*

The issue is whether the State's $20.50 assessment for disabled parking placards and $3.00 assessment for renewal or replacement is a tax or a regulatory fee. If the assessment is a tax, then the Act applies and operates to bar federal jurisdiction unless the state fails to provide a plain, speedy and efficient remedy.[4] *See Wright*, 835 F.2d at 144-45. "It is elemental . . . that the label given an assessment by state law is not dispositive of whether the assessment is a 'tax under state law.' Rather, the definition of the term 'tax' is a question of federal law, and the issue here is whether the assessment is a tax within the meaning of that term as employed by Congress in the Tax Injunction Act." *Id.* at 144 (citations omitted).

The leading decision is *San Juan Cellular Telephone Co. v. Public Service Commission of Puerto Rico*, 967 F.2d 683 (1st Cir. 1992). The court explained that,

> [t]he classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.

*Id.* at 685 (citations omitted).

---

[4]The TIA has also been broadly interpreted to bar suits for declaratory relief, injunctive relief, as well as monetary relief when there is an adequate remedy in state court. *See California v. Grace Brethren Church*, 457 U.S. 393, 408-10, 102 S. Ct. 2498, 2507-09 (1982); *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 586-88, 115 S. Ct. 2351, 2354-55 (1995).

————————

### DISSENT

————————

KAREN NELSON MOORE, Circuit Judge, dissenting. The State of Tennessee charges disabled passengers an assessment for the privilege of obtaining a disabled parking placard. Unlike the majority, I believe that, regardless of where the monies are deposited, Tennessee's assessment clearly constitutes a regulatory fee rather than a tax. I therefore conclude that the Tax Injunction Act presents no bar to federal court jurisdiction, and I respectfully dissent from the majority's holding to the contrary.

The majority reasons that Tennessee's assessment is a tax because, pursuant to Tennessee's statutory scheme, the monies collected from the issuance of disabled parking placards are deposited into general state funds rather than into a special fund earmarked for the administration of the placard program. This heavy reliance on the disposition of the funds obscures the principal inquiry, which "centers on function, requiring an analysis of the purpose and ultimate use of the assessment." *Collins Holding Corp. v. Jasper County*, 123 F.3d 797, 800 (4th Cir. 1997). It is true that the assessments at issue are deposited into a variety of state funds that benefit the public generally. However, the fact that the assessments are commingled with other monies in a general fund for public benefit does not lead inexorably to the conclusion that the dominant purpose of the statute is revenue raising. "Rather than a question solely of *where* the money goes, the issue is *why* the money is taken." *Hager v. City of West Peoria*, 84 F.3d 865, 870-71 (7th Cir. 1996); *see also Hexom v. Oregon Dep't of Transp.*, 177 F.3d 1134, 1138 (9th Cir. 1999) ("The question, in the long run, is not simply where the money is deposited at some point; it is what the purpose or use of the assessment truly is.").

On appeal, Plaintiffs argue that the district court's conclusion is at odds with the plain, unambiguous language of § 9-8-307(a)(2)(A). They contend that their action unquestionably arises out of the issuance of a permit or license. Although we agree that the language is ambiguous and subject to the interpretation adopted by Plaintiffs, we conclude that the proper interpretation of the statute does not preclude Plaintiffs from bringing this action before the Claims Commission.

The jurisdiction of the Claims Commission to entertain claims against the State must be determined from the language of Tennessee Code Annotated § 9-8-307 in its entirety. The primary rule of statutory construction is to ascertain and give effect to the legislative intent. *See First American Nat'l Bank-Eastern v. Federal Deposit Ins. Corp*, 782 F.2d 633, 636 (6th Cir. 1986). In ascertaining this intent, we look to the general purpose to be accomplished by the legislation. *See id.* Section 9-8-307(a)(3) states, "[i]t is the intent of the general assembly that the jurisdiction of the claims commission be liberally construed to implement the remedial purposes of this legislation." Following the statute's mandate, we construe jurisdiction liberally and resolve that the collection of taxes charged for the disabled parking placards can be adequately challenged before the Claims Commission with a subsequent appeal to the Tennessee state courts. The district court properly determined that it was without subject matter jurisdiction.

### CONCLUSION

The State's assessment against disabled persons for the parking placards is a tax for purposes of the Tax Injunction Act. We conclude that the Plaintiffs had a plain, speedy and efficient remedy before the Claims Commission. The district court properly dismissed the action for lack of subject matter jurisdiction.

**AFFIRMED.**

The Sixth Circuit has adopted the First Circuit's approach in determining whether an assessment is a "tax," utilizing the often cited three-factor test: "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." *American Landfill, Inc. v. Stark/Tuscaranwas/Wayne Joint Solid Waste Management Dist.*, 166 F.3d 835, 837 (6th Cir. 1999) (*quoting Bidart Bros. v. California Apple Comm'n*, 73 F.3d 925, 931 (9th Cir. 1996)); *see San Juan Cellular Tel. Co.*, 967 F.2d at 685. Additionally, if "the assessment falls near the middle of the spectrum between a regulatory fee and a classic tax, the predominant factor is the revenue's ultimate use. When the ultimate use is to provide a general public benefit, the assessment is likely a tax, while an assessment that provides a more narrow benefit to the regulated companies is likely a fee." *American Landfill, Inc.*, 166 F.3d at 838 (citations omitted). Fees can serve regulatory purposes as distinguished from general public purposes in two ways: either by discouraging particular conduct through the device of making it more costly, or by generating income ear marked to cover the cost of the regulation. *See San Juan Cellular Tel. Co.*, 967 F.2d at 685.

The record demonstrates that the State's assessment is a tax rather than a fee. Under the statutory scheme imposed by the Tennessee legislature, the $20.50 disabled placard assessment and the $3.00 renewal assessment are apportioned into the State's highway fund, the general fund, the police pay supplement fund, and the trooper safety fund. *See* Tenn. Code Ann. §§ 55-4-103, 55-4-111, 55-6-107, 55-21-103. Specifically, the assessment is allocated as follows:

1. The $20.50 placard fee collected by county clerks and remitted to the Title and Registration Division of the Tennessee Department of Safety or remitted directly to the division by applicants is deposited in

the State of Tennessee Treasury and is allocated in the following manner:

(A) There is $18.75 registration tax provided by Tenn. Code Ann. §§ 55-21-103(b)(2)(A)(i) and 55-4-111(a)(1). Of this $18.75 the first $1.00 is paid into the state treasury and credited to the police pay supplement fund. Of the $17.75 remainder, ninety-eight percent (98%) is distributed to the general highway fund and two percent (2%) to the general fund. This distribution is made pursuant to Tenn. Code Ann. § 55-6-107, which directs the proceeds of any tax collected under Title 55, chapter 4 to be used for the general public benefit in highway and improvement projects and in retirement of state debt.

(B) The $0.75 reflectorization fee collected pursuant to Tenn. Code Ann. § 55-4-103(f)(2) is sent to the General Fund earmarked for use in the salary supplement for law enforcement members of the Department of Safety.

(C) The $1.00 reflectorization fee provided by Tenn. Code Ann. § 55-4-103(f)(1) is allocated to the General Fund.

2. The $3.00 fee charged upon renewal of an expired placard pursuant to Tenn. Code Ann. § 55-21-103(f)(1) is allocated to the Highway Fund and the General Fund in the same manner as the $17.75 registration tax.

The State's assessments are allocated in a manner that make it clear the ultimate purpose of the assessments is to benefit the general public of the State of Tennessee. As such, the assessment must constitute a tax under the TIA. *See American Landfill, Inc.*, 166 F.3d at 839-40 ("The revenue's ultimate use as a benefit shared by the public and not just the waste disposal facilities dictates that the assessment here is a

several types of claims that may be brought before the Claims Commission, while Tennessee Code Annotated § 9-8-307(a)(2) limits the type of claims that may be brought. The limiting provision provides:

No item enumerated in this subsection shall be interpreted to allow any claim against the state on account of the acts or omissions of persons, partnerships, corporations or other entities licensed or regulated by agencies of the state, notwithstanding any negligence committed by the state in the course of performing licensing or regulatory activities. No item enumerated in this subsection shall be interpreted to allow any claims against the state arising out of or resulting from:

(A) The issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization . . . .

Tenn. Code. Ann. § 9-8-307(a)(2).

The district court agreed with the State's interpretation of the statute, and concluded that Plaintiffs had a plain, speedy and efficient remedy. It ruled that "Defendants [were] correct that plaintiffs [were] not making a claim on account of the acts of any such entity," and "[t]hus, the first sentence of Tennessee Code Annotated § 9-8-307(a)(2) [did] not preclude plaintiffs from bringing their claim before the Commissioner." Additionally, the district court stated that the language of § 9-8-307(a)(2)(A), which precludes claims against the state "arising out of or resulting from . . . [t]he issuance . . . of . . . any . . . license," did not preclude Plaintiffs' claim because they were not seeking damages based on the issuance of a license. Rather, Plaintiffs' claim was based on the State's practice of charging disabled individuals for a parking placard which allegedly violated the ADA.

purpose was unrelated to the costs associated with the disabled placard program; and finally, the assessment was a tax within the meaning of the TIA.

### 2.   *Whether Plaintiffs Have a Plain, Speedy and Efficient Remedy Under State Law*

Although the assertion of federal jurisdiction may interfere with state tax assessment and collection, such jurisdiction will nonetheless exist if the state fails to provide a "plain, speedy and efficient remedy" in state courts. 28 U.S.C. § 1341. The plain, speedy and efficient remedy contemplated by the TIA merely requires that the state provide certain minimal procedural protections against illegal tax collection. *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512, 101 S. Ct. 1221, 1229 (1981). The state need only provide a full hearing at which a taxpayer may present and secure a judicial determination at which he or she may raise any and all constitutional objections to the tax. *See id*. Furthermore, we have concluded that "[s]tate procedures that call for an appeal to a state court from an administrative decision meet these minimal criteria." *Northwest Airlines, Inc. v. Tennessee State Bd. of Equalization*, 11 F.3d 70, 72 (6th Cir. 1993).

Whether the State of Tennessee provides a "plain, speedy and efficient remedy" in state courts depends on the interpretation of the Tennessee statute which both allows and limits monetary claims brought before the Claims Commission. *See* Tenn. Code Ann. § 9-8-307. This statute provides that the Tennessee Claims Commission has exclusive jurisdiction over a claim "for the recovery of taxes collected or administered by the state."[7] Tenn. Code Ann. § 9-8-307(a)(1)(O). Tennessee, however, has not declared itself subject to suit in all actions to recover taxes. Rather, Tennessee Code Annotated § 9-8-307(a)(1) sets out a list of

[7]The decision of the Claims Commission is appealable to the state court of Tennessee. *See Stewart Title Guar. Co. v. McReynolds*, 886 S.W. 2d 233, 237-38 (Tenn. Ct. App. 1994).

tax."). The State's highway fund, the general fund, the police pay supplement fund, and the trooper safety fund "relate directly to the general welfare of the citizens of Tennessee and the assessments to fund them are no less general revenue raising levies simply because they are dedicated to a particular aspect of the commonwealth." *Wright*, 835 F.2d at 145.

There is simply no evidence to support Plaintiffs' contention that the funds collected from the placards are paid into a special fund to benefit the regulated entities or to defray the cost of regulation. Plaintiffs, however, have submitted a 1994 "Fiscal Note Support Form" to infer the legitimacy of their contention. This document provides that the fiscal impact of a proposed amendment to the Disabled Drivers Law changing the term "handicapped" to "disabled" pursuant to the ADA and charging a renewal fee of $5.00 per placard every two years would be $204,000 bi-annually with an estimated revenue of $500,000. The Disabled Drivers Law was ultimately amended to provide for a renewal fee of $3.00 bi-annually. *See* Tenn. Code Ann. § 55-21-103(f)(1). The argument, asserted by Plaintiffs and adopted by the dissent, that the revenue generated by a $3.00 bi-annual assessment ($300,000) supports a relationship between the assessment and the cost of the renewal program ($204,000), is speculation. *See infra* pp. 16-17. We do not know the reasons why the legislature decided to reduce the $5.00 amount to the $3.00 amount; what we do know is that the renewal amount charged is ultimately used to support the highway fund and the general fund. *See supra* p. 8.

Plaintiffs' further contention that the revenues generated by these assessments do not affect the State's budget in "any material way" also finds no support in the record. As we recently explained, the TIA "makes no exception for challenges to taxes which constitute a small portion of a state's revenue sources rather than a large portion." *American Landfill, Inc.*, 166 F.3d at 840.

The only evidence in the record regarding any costs associated with the State's disabled parking program is the actual cost of the disabled parking placard. The Director of the State of Tennessee Department of Safety, Title and Registration Division testified that the cost of the permanent placard was 45.4 cents ($0.454) and the disabled license plate was $1.32. While we do not dispute that there must be other administrative costs associated with the program, we do not know the source or the amount of those administrative costs. Plaintiffs have simply failed to demonstrate that the $20.50 is some approximation of the costs associated with the program.[5] *See Thrope*, 19 F. Supp. 2d at 823. The substantial difference between the actual cost of the permanent placard or license plate and the amount that must be paid to obtain one supports a conclusion that the assessment is for general revenue raising purposes. *See id.*

Plaintiffs contend on appeal that "the State's targeting of a narrow class is expressly prohibited by Congress in the ADA, and it overlooks the fact that the charge is in the nature of a privilege fee in that the charge for the parking placard is for

---

[5] Tennessee derives the $20.50 for the disabled parking placard and vehicle registration from the amount charged for the registration of all Class C passenger motor vehicles. *See* Tenn. Code. Ann. § 55-21-103(b)(2)(A)(i) ("If the applicant has not applied for vehicle registration, then the cost of the placard shall be the same as the regular fee for passenger motor vehicles, as provided in § 55-4-111."). The dissent reasons that the original enactment of the Disabled Drivers Law of 1975, which provided that the actual cost of the placard be paid by the disabled driver, tied the amount assessed to the costs of the program, and thus suggests that the purpose of the assessment was regulatory. *See infra* p. 16. This reasoning, however, does not overcome the insurmountable fact that the current version of Tennessee Code Annotated § 55-21-103(b)(2)(A)(i) requires disabled persons who receive disabled parking placards upon registration to pay the same approximate amount required of non-disabled persons to register their vehicle. Further, the collected monies from the disabled persons are distributed in the same way as non-disabled persons. *See* Tenn. Code Ann. §§ 55-4-111(a)(2), 55-6-107(a). Disabled persons are merely being taxed in the same way that non-disabled persons are being taxed.

the privilege of parking in handicapped parking spaces." This contention, however, fails to address the district court's conclusion that the instant circumstance is inapposite to that of *Collins Holding Corp. v. Jasper County*, 123 F.3d 797, 800 (4th Cir. 1997) (stating the proposition that when "the assessment covers only a narrow class of persons and is paid into a special fund to benefit regulated entities or defray the cost of regulation, it sounds like a fee."). Plaintiffs have successfully shown that only a narrow class of persons is charged with the assessment, but they plainly fail to present any facts to show that the assessments are "paid into a special fund to benefit regulated entities or defray the cost of regulation."[6] *Id.*

Using the three-factor inquiry outlined in *San Juan Cellular Telephone Co.* and adopted by this circuit leads to the same conclusion. Both the first and third factors weigh heavily in favor of the State. Not only did the State of Tennessee authorize and legislate that the assessments be charged against disabled persons, but they also provided the manner in which they were to be allocated to benefit the general public. Although the second factor, the parties upon whom the assessment is imposed, weighs in favor of the Plaintiffs, the district court properly determined that "[s]tanding alone, the fact that an assessment targets only a narrow class of people is not enough to characterize the assessment as a fee. *See Wright*, 835 F.2d at 144-45 (holding that fees charged to parolees were taxes for purposes of the TIA)."

Based on the evidence in the record, the district court properly concluded that the ultimate purpose of the State's assessment was for general revenue raising purposes; such

---

[6] The dissent would rather focus the inquiry on "*why* the money is taken" instead of "*where* the money goes." *Infra* p. 15. Although such inquiry is entirely appropriate, the answer inexorably leads us to the evidence in the record which shows us that the money is taken to benefit the general welfare, and not to defray the specific costs of the disabled parking placard program.